Chief Justice Marshall
delivered the opinion of the Court.
This action of ejectment was brought, on the demise of the heirs of Mrs. Prances Pope, to recover land era- *• braced in a deed made in 1823, which purports to convey to E. B. Gaither all the land devised to said Frances by the will of her first husband, M. Walton, of *164 which the land in contest is a part, and under which deed, as passing the title of Mrs. Pope, the defendants claim.
The pro-visions of lhe act of 1840 bearing on this case,
It appears that Mrs. Pope died in 1843, having had no children by the marriage; that her husband, John Pope, died in 1845, and that this action was commenced in 1848, within three years after the death of the husband, but not until about five years after the death of the wife. Upon an agreed case, stating these and other facts involved in the action, a judgment was rendered for the plaintiff. And, in this Court, two principal questions are presented, the decision of either of which in favor of the defendant, will not only reverse the judgment, but will, in its consequences, as admitted on both sides, defeat the action. These questions are, 1st, whether the deed to Gaither is sufficiently authenticated to pass the title of Mrs. Pope, and 2d, whether if it be not the act of 1840, “to amend the law limiting actions for the recovery of land by females and their heirs,” (3 Stat. Law, 413,) applies as a bar to this case. We shall consider this second question first.
The title of the act has been already stated. It proceeds to enact:
“Sec. 1. That all suits and actions hereafter instituted for the recovery of land, or the possession thereof, by any female, or her heirs — when such feme has or shall hereafter, jointly with her husband, execute a deed for the conveyance of her right of inheritance to the same — on the ground that the officer before whom such deed has been or shall be acknowledged, has only certified that the feme has relinquished her right of dower; or on account of such deed’s not having been lodged for record, in the proper office, in due time; or on account of a defect in the authentication of such deed, when the same has been or may hereafter be executed, in or out of the State of Kentucky; or for the want of a dedimus potestatum, or commission to take the acknowledgement of the same; or on account of the want of a proper authentication, or record of a power of attorney under the authority of which the deed has been *165 or may be executed, shall be commenced within three years next after such feme has or shall become discovert, or next after the death of the husband, in case he survives her: Provided, that when such feme shall die before she becomes discovert or before the time has run out after she becomes discovert for her to sue, and leaves heirs laboring under the disability of coverture, lunacy or infancy, they shall be allowed the same time to commence their suits, or actions, after the disability shall be removed, now allowed by law in other cases.
Statutes of limitation being intended to give repose to those having right, or apparent right, should be liberally construed with the view to é attain the object intended.
The act of 1840 limiting the time-for bringing suits-by widows and' their heirs for lands, which it has been attempted to convey by husband and wife, confined to the cases enumerated in the statute. In all other cases, the widow, or her heirs, ¿as twenty years from the heath of the husdand.
“Sec. -. That this act shall not take effect, as respects deeds heretofore made, until the first day of January, 1843.”
From the title of the act, as well as from the operative words by which it prescribes a rule of action, it is evident that it is strictly an act of limitation, and that it was not intended and should not operate to give a right except so far as by limiting the time of asserting title, it creates or confirms a right in the party who is in possession. If it were not of this character simply, it would be something more than an act of limitation. But being, as it clearly is, an act of limitation only, it resembles other acts of that name and character in its object and effect of giving repose and quiet to parties in possession under an apparent right. And such acts, especially, when relating to land, are entitled to, and have generally received from this Court, a favorable regal’d and a liberal construction, with a view to the attainment of their objects.
The act then was intended to amend the law limiting actions by females and their heirs, which carries us back to the previous law limiting such actions. But in looking into the body of the act, we see that it does not apply to all actions by females and their heirs, but only to cases in which there has been or shall be an attempt by husband and wife to convey the title of the wife-; and when, by reason of one or other of the enumerated defects, the deed has failed, or is supposed to have failed to pass the title of the wife, and on the ground of this defect she or her heirs assert title and- sue for *166 the land. In all of these cases, by the previous and present law, if the deed be actually inoperative as to the wife, she or her heirs have a right of entry and of action as soon as the title or power of the husband to control her land ceases. And by the previous law, limiting their actions in such cases, she and her heirs had twenty years, within which to commence their suits, from the time when this right of entry or cause of action accrued. It was obviously the purpose and only purpose of the statute to reduce the period of limitation, in all the enumerated cases, from twenty to three years, after the 1st day of January, 1843. And while it thus left an opportunity to the females or their heirs, certainly sufficient for the assertion of their right, whenever the/me had not, in fact, freely and willingly executed the deed, its object and intent was to hasten the period when the bona fide purchaser might be absolutely protected by lapse of time, against the assertion of a claim, founded solely upon technical defects, for the most part, committed by the officers of the law, but which invalidated the evidences of his purchase, and in point of law, left the title in the wife, subject only to the effect of the deed, as the sole act of the husband. And as this purpose, in its nature, applies alike to all claims and actions founded upon the enumerated defects, so we cannot doubt that the legislature intended to subserve this purpose, in the act before us, by prescribing a new and reduced limitation to all actions founded upon any of them, without discrimination as to persons or circumstances, except as it has expressly made it in favor of persons under certain disabilities defined in the proviso.
Indeed, so manifest is the purpose and intent of the act, that it would not be perceived on a cursory reading, that the effect of one its clauses, if taken literally, is to exclude from the new limitation a case, the circumstances of which constitute no possible ground for the discrimination, and the exclusion of which, as it would in that case prolong the period for litigation, and postpone the period of repose, would so far defeat the intern *167 tion of the law-makers. We refer to.the language used, to describe the period, or event, from which the three years are to be counted, within which suits or actions, in the cases referred to, must be commenced by the feme or her heirs. The words are that these suits or actions shall be commenced within three years-“next after such feme has or shall become discovert, or next after the death of the husband, in case he survives her.” The statute describes and was, unquestionably intended to apply, in some way, to all actions by females or their heirs, founded on the enumerated defects. And as all are to be commenced within three years, the obvious inference from this fact, as well as from the identity of the mischief and of the object in every case, is, as already stated, that the same-limitation, the same interval for litigation, and the same period for absolute repose, was intended to be prescribed, in every case, where a right of action should be founded on any of the enumerated defects. But upon scrutinizing the language, first quoted, it appears that, according to its literal import, three years are allowed, after the death of the husband, in every case in which he survives the wife. So that, although the power of the husband over the title and the land of the wife ceases absolutely upon her death, if there have been no child of the marriage; and although the right of entry and of action accrues to her h.eirs at the same moment,.the-new limitation would not operate upon them until the husband’s death — and if he live twenty years the act would not affect them — but they are left under the old limitation — while if the right of entry and cause of action accrue to the wife by the death of her husband first, the act operates upon her, and she must sue-within three years. And so,although whenthehusbandistenant by the curtesy and has a life estate in the land, the threeyears do not commence running against the heirs of’ the wife until the husband’s death. It properly begins then, and not before, because until his death they have no- immediate right or cause of action. Most assuredly the legislature did not, as seems to have been sup *168 posed in argument, intend by this act of limitations to change the marital law and give the husband a life estate in his wife’s land, though there were no issue of the marriage; nor in that case to suspend the right of her heirs to sue him or his alienee for her land. The object was not to postpone, but to shorten the period of suing. And, as in the case supposed, the right of the heirs, undoubtedly, accrues at the moment of the wife’s death, and they may immediately sue; the effect of the interpretation contended for, is to subject them to no certain limitation whatever, and to apply to them within the period of twenty years, which was the old limitation — a contingent limitation of three years after an event which has no effect whatever upon their title or right of action. This result, so obviously inconsistent with the general scope and tenor of the act, and certainly subversive of its general intent, cannot be attributed to any actual intention to exempt the case referred to, from the same limitation which is prescribed for other cases, since no possible motive can be suggested for such an exemption. Nor can it be imagined that the legislature intended to introduce a new principle into this act of limitation, by making the prescribed period for bringing the action depend, for its. commencement, on the happening of an event, which, in -the case in question, is not only immaterial to the right, but could not happen until after the cause of action had accrued, which would be to make the limitation unce2-tain in evei-y particulai', except in beurg longer than the p2’escribed period of three years, and necessarily commencing not when, but at some indefinite pei'iod after, the cause of action accrued.
No such anomaly was intended. Nor was it intended to depart from the uniform principle pervading this as well as all other acts of limitation, that the period of limitation commences running from the accrual of the cause of action, and not afterwards, except in cases specially excepted, on account of disability or difficulty of suing. We cannot doubt that this act was intended and supposed to be in strict conformity with, *169 that principle, and that the clause stating, the events from which the three years should be counted, was intended to, and believed to have specified all the events on which the cause of action would accrue; that it was intended to indicate the accrual of the cause of action by either of these events, and thus to have been equivalent to the use of that phrase, as showing the time from which the three years were allowed for bringing the actions. The enumeration, or attempted enumeration of these events, was clearly not intended to limit or define the cases to which the rule of three years should be applied, nor to exclude any which are embraced in the statute, but merely to show when the three years should begin to rün. In attempting to do this by specification, instead of doing it by general terms, which would certainly embrace all cases, the' wife’s becoming discovert, or the husband’s death, if he survives her, are the only events specified from which the three years are to run. If both of these cases refer to the husband’s death, in one case before and in the other after the wife, then the death of the wife before the husband is not included among the events front which the limitation is to run; and it certainly is not unless the words “next after she has or shall become' discovert,” can be understood as including a termination of her coverture by her own death, as well as by that of her husband, which might be deemed a violent construction. On any other construction, the enumeration of the events from which, according to the manifest intention to be collected from the previous parts of the statute, the limitation is to run, is imperfect, and this clause has, through inadvertence, failed fully to express and carry out the intention of the law-makers* What then is to be the consequence? Is not the limitation of three years to be applied to all actions founded upon the specified defects in conveyances executed by husband and wife? And is it not to commence from the accrual of the cause of action in every case?
Suppose the statute, after specifying the actions, had, merely said, they “shall be commenced in three years;” *170 would the Court have hesitated to say that the three years were to commence at the accrual of the cause of action, and to give it the same effect as if these words had been in it? Or suppose it had said, “within three years from the death of the husband, or wife,” would it not hove been construed as if it had stopped at three years? And would not the Court have said that the three years should begin at the death of the wife before the husband, when he is not tenant by the curtesy, and at the death of the husband after the wife, when he is tenant by the curtesy? And would not the result have been the same, if thewords had been “within three years from the termination of the coverture, or the death of the husband if he should survive the wife ?” And if all this would not only be authorized, but required, by the certainty that the' statute intends to apply the same limitation to all of the actions embraced in it, and that this identity and the very nature of a limitation to actions require that the time of limitation shall commence at the accrual of the cause of action, must we not, on the same considerations, say that three years from the death of the husband, if he survive the wife, indicate the commencement of the three years, in those cases only in which he is tenant by the curtesy? And then, as the event of the death of the wife before the husband, he not being tenant by the curtesy, would still be omitted, would we be bound to say that the mere omission to state that event as one of those from which the three years were to run, though caused by inadvertence, shall have the effect of excluding from the statute a case clearly within its letter and spirit, and of thus exempting it from the limitation of three years, which was obviously intended to apply to it?
Suits iot land by a feme covert ox her heirs for her lands which it was attempted to convey, but which was not conveyed for defects, as specified in the act of 1840, must be brought within 3 yeais after the light oí action acciues, whether the husband be [dead or living.
*170 Sooner than give such an effect to a mere omission in a clause intended not to specify the cases upon which the limitation should operate, but only the contingencies arising in those cases from which the cause of action might accrue, and the period of limitation commence, we should feel bound to reject the attempted specification of these contingencies, as being superfluous as *171 well as imperfect, or to adopt if necessary the construction that the words, “after the wife becomes discovert,” refer to a termination of the coverture, whether by her death or that of her husband. But as there is enough in the statute, independently of this attempted specification, to authorize the application of the three years limitation, commencing at the accrual of the cause of .action, to every action described in the act; end as the omission to specify, in the clause referred to, the contingency of the wife’s dying before the husband, he not being tenant by the curtesy, cannot take out of the statute such actions as are founded on title accruing by that contingency, we are of opinion that the statute fully authorizes, and indeed requires the application to that case, of the limitation of three years, commencing at the the accrual' of the title. And we restrict the words “ next after the death of the husband, in case he survive the wife,” to the case in which he is tenant by the curtesy, because,to apply it to the case in which he is not tenant by the curtesy, would be repugnant to the substantial provisions of the statute, and defeat its intended operation. It is true, the words of this clause, according to their literal and grammatical construction, are perspicuous enough, and free from ambiguity. But when applied to-the subject matter, and compared with the context and with statutes and laws in pari materia, it is found that,, according to their literal import, they contain a principle repugnant to the body of the statute, and to the principle of this and all other acts of limitation; we-therefore restrain the full operation of the words, so as-to avoid this repugnancy. And seeing clearly that this; clause was intended to specify all the contingencies on. which the right of action depends, in the cases described in the preceding part of the act,- and that it was intended to subject all the actions to- the same limitation of three years from the accrual of the cause of action,, we construe the clause as if it read, “ within three years,” or “within three years after the accrual of their title or cause of action,” or “ within three years after the wife has or shall become discovert, or after her *172 death if the husband survive and be not tenant by thecurtesy, or after his death if he survive and be tenant by the curtesy,” or “within three years after the termination of the coverture by the death of the husband, or by the death of the wife if he be not tenant by the curtesy, or three years after his death if he survive her and .be tenant by the curtesy.” All of these readings have precisely the same meaning, and correspond precisely with the object and spirit and letter of the statute, unless a disagreement be found in the specifications under consideration; and those specific ations, if repugnant, should be disregarded, or though not repugnant, being superfluous and evidently imperfect, should not control, but must yield to, and be moulded to a conformity with, the more substantial and explicit provisions of the act.
The Court have nopowertomake law, but it is their duty so to expound statutes ps to give effect to the obvious intent of the Legislature; in doing which the Court should have respect to the context, subject matteT, pause of the etipctinent,' and consequences which follow tile ponstructionjand not be oonflned jo the letter. (4 fritt. 377.)
It is said, that to construe a statute as if certain words which it contains were not in it, and as if' it did contain other words which are notin it, is transcending the judicial function, and assuming that of the legislature, But while it is admitted that the Court has no power to make the law, it is equally true, that it is their province and duty so to expound the statutes as to ascertain and effectuate the will of the law makers. And experience has shown that if every word or clause of every statute were to have its literal force and effect, without regard to the context and spirit, of the whole or to the subject matter, or the causes or consequences of the enactment and of the construction, some statutes might be found wholly incapable of enforcement, while others might, in their operation, defeat or fall entirely short of their manifest object. Upon this subject we quote from the opinion of this Court, in the case of Mason vs Rogers, (4 Littell, 377,) the following passage not less truty than forcibly expressed. The Court then said, “ The literal interpretation of an act is certainly not, in all cases, the interpretation which either reason or law requires to be given to it; for it is not the words of the act, but the will of the Legislature which constitutes the law, $nd though words are the most common, they are not *173 the only signs of the legislative will. The context, the subject matter, the effects and consequences, and the reason and spirit of the law, are often called in to aid in ascertaining the intention of the Legislature. No language is, indeed, so perfect as to afford words to express every idea upon all subjects, and even when words are not wanting those that are most happily adapted to the purpose in view, do not always occur to the minds of the Legislature. Hence it is that words are employed which sometimes go beyond the legislative will, and sometimes fall shoz't of it, which somethnes are too genez’al and comprehensive, and sometimes too particular and restricted. And it is, therefore, an established rule of construction, applicable to all remediable statutes, that cases within the reason and not within the letter of a statute, shall be embraced by its pi’ovisions, and cases not within the reason though within the letter, shall not be taken to be withhi the statute.’’ These principles are fully sustained by authority, and although theymay notgiveso wideascopeintheexposition of statutes of limitation as of some others, still the main object of ascertaining and effectuating the legislative will is the same with respect to all. And if we may not go so far out of a statute of limitations for ascertaining that will as if it were more strictly remedial; yet if the legislative will be found plainly exhibited in the statute itself, it must be equally within the province of the Judge so to construe its different parts as if possible to make them harmonize, and by supplying manifest deficiencies or rejecting minor repugnances and superfluities by which the evident object of the act might be defeated, to make the whole co-operate in carrying out the will of the Legislature. And it would seem to be a perversion of the judicial power of expounding and enforcing the legislative will, to allow that will, when clearly manifested by the substantial provisions of an act, to be defeated or materially obstructed by the literal interpretation of a subordinate clause which might have been wholly omitted»
The disabilities which save the right of action to the heirs of a married woman ■who has attempted to convey her lands, as specified in the act of1840, are to be the same as ■would save the right of action under the statute of limitations of 1796 and 1814; all must be under disability.
With regard, to the proviso, in this statute, we need only say that, in describing the persons whose disabilities may postpone the commencement of the limitation, it describes them collectively as heirs of the feme, and being, therefore, analagous to the saving clause in the general statute of limitations of 1796, we give to it the same construction which that clause has received, as requiring all the persons entitled as heirs to be under disabilty. And, we suppose, that as the right of action in the cases specified in the act before us, would, if that act had not passed, have been subject to the general limitation act of 1796, so the time allowed to persons under disability by that act, as modified by the act of 1814, is the law referred to in this proviso, for determining the extent of their privilege after the disabilities are removed.
As, upon our view of the act of 1840, the bar of three years applies to the present action, as having been brought more than three years after the death of Mrs. Pope, though within three years after the death of her husband, we only remark with reference to the authentication of the deed to Gaither, that the certificate of acknowledgment is substantially the same, as has heretofore been deemed insufficient by this Court. And, although, as no statute has prescribed the form in which the Clerk shall certify the acknowledgment and privy examination of a feme, we should be disposed to allow considerable weight to the form or usage adopted commonly by Clerks, when the power of taking the acknowledgment was conferred on them, if it had been shown to have been a common usage to certify, substantially, as they had done; when the deed was acknowledged before the Court, yet we have not had such evidence of any general practice on the subject as would authorize a change of opinion with regard to the facts necessary to be shown in the certificate. And we are still of opinion that the Clerk being a ministerial and not a judicial officer in taking the acknowledgment and admitting the deed to record, his certificate should show the material facts on which he has acted-
J. 4* W. L. Harlan, C. A. Wichliffe, B. Hardin and Haskin for plaintiff; Bradley for defendants.
But upon the other question stated and decided, the judgment in favor of the plaintiff being erroneous, is reversed and the cause is remanded for a new trial.