CASE 72—ACTION FOR MANDAMUS—APRIL 25.

## Neumeyer, Auditor, v. Krakel.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—POWERS OF CITY COUNCIL AS TO POLICE DEPARTMENT—REPEAL OF STATUTE—REQUIREMENT THAT PAY ROLL SHALL BE APPROVED BY COUNCIL—TERMS OF POLICE OFFICERS—POWER TO ABOLISH OFFICE.

Held: 1. The act of March 23, 1894, amendatory of the charter of cities of the first class, provides that "the government, administration, disposition and discipline of the police department and police force shall be such as the board of public safety may . . . prescribe, but in strict conformity to the provisions of 'An act for the government of cities of the first class;' and also that "the board of public safety shall have power, and it is authorized, to increase the police force by adding to the number of patrolmen from time to time, provided the general council shall have previously made an appropriation for that express purpose." The amendment further provides that "the board of public safety shall designate the salary and compensation for each member and officer of said police force, and may fix the salaries and compensation of such clerks and employes, other than policemen, whom they shall be authorized by law to employ, subject, however, to the gross amount of the appropriation made by the general council for the support of said department," and that the compensation of the members of the police force shall be payable monthly, by pay rolls, as provided by ordinances." Held, that the amendment does not take from

the general council the power which it had under the original charter to regulate by ordinance the number of policemen, the officers to be appointed, and the salaries to be paid.

2. It is not to be presumed that the Legislature intended, by words which do not refer to the general council, to take from that body a power naturally belonging to such bodies, and uniformly exercised by them.

3. The general council of a city of the first class has power, by ordinance, to require that all pay rolls shall be approved by it before payment, though that be an executive function, especially as such an ordinance had been in force for many years prior to March 23, 1894, and the amendment of that date to the charter distinctly recognizes the ordinance.

4. Under Kentucky Statutes, section 2982, part of charter of cities of first class, providing that "any unexpended balance of an appropriation in any current fiscal year shall be added by the comptroller to the amount appropriated for the same purpose out of the levy for the succeeding year," and that "unappropriated balances of levies in any current fiscal year shall be passed to the credit of the same funds for the succeeding year," the board of public safety has no power to use in any year, in addition to the amount appropriated by the general council for the police department, any balance in the treasury arising from a levy for the same purpose for previous years, until it has been appropriated by the council.

5. Constitution, section 23, forbids the general assembly from creating any office, "the appointment of which shall be for a longer time than a term of years." Id., section 93, provides that inferior state officers may be appointed for a term not exceeding four years. Id., section 107, makes the same provision as to inferior county or district officers. Id., section 160, provides that the terms of town or city officers elected by the voters shall be four years, and until their successors shall be qualified. Held, that appointive city officers can not by statute be given a term longer than four years; and therefore it would seem that Kentucky Statutes, sections 2874, 2882, providing, in effect, that policemen shall not be removed by the board of safety during good behavior, are void to the extent that they attempt to give a term of more than four years.

6. Limitations upon the power of the board of safety to make changes in the police force do not prevent the council, in the exercise of its legislative power, from reducing the number of policemen so as to put a policeman out of office before the expiration of his term.

CHIEF JUSTICE PAYNTER and JUDGES GUFFY and WHITE DISSENTING.

Vol. 110—40

Neumeyer, Auditor, v. Krakel.

HENRY L. STONE FOR APPELLANT.

1. The general council of the city of Louisville has power by ordinance to fix the number and salaries of the officers and members of the police department.

2. "Unappropriated balances of levies," in previous fiscal years for police purposes, when collected, can not be added to the regular appropriation by ordinance for such purposes for the current fiscal year, or be expended by the board of public safety, until said balances collected shall be appropriated by ordinance of the general council.

3. The general council has power by ordinance to prescribe the manner in which claims against the city, including the pay rolls and expense account of the police department, shall be made up, certified, registered, allowed and paid; and the auditor has no power to issue a warrant on the treasurer for any claim, except in accordance with the provisions of such ordinance.

## AUTHORITIES CITED.

Third Biennial Compilation of Ordinances of the City of Louisville, pp. 85-86; Ky. Stats., secs. 2880-2874; Renneck v. City of Lexington, 20 Ky. Law Rep., 1609-1924; Buckner v. Gordon, 81 Ky., 665; Pollock's Admr. v. City of Louisville, 13 Bush, 221; Gorley v. City of Louisville, 20 Ky. Law Rep., 602; Ky. Stats., secs. 2742, 2816, 2783, 2756, 2901, 2898, 2822, 2894, 2884, 2880, 2873, 2820, 2821; Union Ins. Co. v. Hoge, 21 How., 35; Matthews v. Shores, 24 Ill., 27; Solomon v. Com'rs., 41 Ga., 157; Plummer v. Plummer, 37 Miss., 185; U. S. v. Pugh, 99 U. S., 269; C. R. & S. R. T. Co. v. Commonwealth, 96 Ky., 525; Harrison v. Com., 83 Ky., 170; U. S. v. Moore, 95 U. S., 763; Burnett's City Code, secs. 9 to 16, pp. 153-4.

KOHN, BAIRD & SPINDLE AND ZACK PHELPS, ATTORNEYS FOR APPELLEE.

It is the contention of the appellee:

1. That under the law governing cities of the first class the board of public safety of the city of Louisville has exclusive authority to fix the number of men constituting the police force and to fix salaries of the men employed.

2. That the general council has no authority to approve or disapprove of a pay roll of the board of public safety, but that it is the duty of the auditor as long as there is a sufficient appropriation to meet the pay roll certified by the board of public safety, to issue his warrants as directed by the pay roll thus made out.

Neumeyer, Auditor, v. Krakel.

The claim that there is a dispute as to the amount of salary due the appellee is not a dispute of fact, but a dispute of the construction of the statutes pertaining to the subject. The appellee has been awarded by the board of public safety (which we claim is the only authorized body to pass upon the subject), the salary of a captain only for the time he has been serving as a captain. The appellant disputes his title to this salary only because he contends that the general council, and not the board of safety, had the right to fix the appellee's office.

Unless the bare fact that a petition for a mandamus is not confessed is not sufficient to defeat the right to the writ, the remedy is the proper one in the case at bar.

### AUTHORITIES CITED.

Page v. Hardin, 8 B. Mon., 659; Dillon on Mun. Corps., 4 ed., vol. 2, sec. 831a; Babcock v. Goodrich, 47 Cal., 488; Hospital v. Higgins, 15 Ill., 185; U. S. v. Ottawa, 28 Fed., 407; State v. Mount, 21 Ill. Ann., 352; Reynolds v. Taylor, 43 Ala., 420; People v. Brennan, 39 Barb., 536; State v. Dinkins, 27 Southern, 832; City Little Rock v. U. S., 103 Fed., 418; Garrard Co. Court v. McKee, 11 Bush, 234; City Somerset v. Somerset Bank, 22 Ky. Law Rep., 1129; Hickman Co. Court v. Moore, 2 Bush, 108; Ky. Stats., 2809, 2873, 2880, 2882, 2884, 2874; Gorley v. Louisville, 20 Rep., 602; Lexington v. Rennick, 20 Rep., 1609-1924; Ky. Stats., secs. 2743, 2804, 2816, 2817, 2819, 2820, 2821, 2822, 2897 to 2901, 2980, 2981, 2982, 2902, 2903; 17 Am. & Eng. Ency. Law, 235; Cooley Con. Lim., 227; Dillon on Mun. Corps., secs. 317, 324; Thomas v. Railroad. 101 U. S., 71; Central Company v. Pullman Co., 139 U. S., 24; Wardell v. Railroad, 103 U. S., 658; State v. Cornell, 83 N. W., 72; Board v. Paducah, 21 Rep., 1650; Ky. Constitution, sec. 180; Louisville, City, v. Gosnell, 60 S. W., 411.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING, FOLLOWED BY DISSENTING OPINION OF CHIEF JUSTICE PAYNTER, IN WHICH JUDGE GUFFY AND JUDGE WHITE CONCUR.

Previous to February 1, 1900, the police force of the city of Louisville consisted of 1 chief of police, 6 captains, 10 lieutenants, 10 sergeants, 9 detectives, and 290 patrolmen. By an ordinance enacted by the city council, which took effect on January 31st, it was provided that there should be thereafter only 4 captains, 8 lieutenants, 8 sergeants, 294

patrolmen, and that detectives should be selected from the number of regular patrolmen provided for in the ordinance. The board of public safety complied with the ordinance, discharging from the force 10 men, and making the reduction in the other officers as directed by it. Appellee, Andrew Krakel, was a captain of police, and was reduced from captain, with a salary of $1,300 a year, to lieutenant, with a salary of $1,000 a year. It appears that the 10 discharged policemen brought suit questioning the authority of the general council to control the matter by ordinance, and it was held by the Jefferson Circuit Court that the ordinance was void. The board of public safety then restored the 10 men who had been discharged, and reinstated appellee in his previous position as captain. This order took effect on the 22d day of April, 1900. The general council refused to recognize the authority of the board of public safety, or to approve the pay roll for appellee's salary; and he thereupon instituted this action against appellant as auditor of the city for a mandamus, compelling him to issue a warrant for the payment of his salary. On final hearing the court below awarded appellee the relief sought, and the auditor prosecutes this appeal.

The city ordinances fixed the number of men to be employed on the police force, and the salaries to be paid the different grades of officers. It was also stipulated that only the number of officers and employes prescribed by the ordinances should be employed, that their salaries should be no more than the sums fixed by it, and that the pay rolls should be made up and certified each month for the approval of the general council, and should not be audited or paid until so approved. It was held by the court below that the ordinances referred to are in conflict with the statutes of the State, and therefore, void. Several ques-

tions arising on the appeal, and of no little difficulty, have been presented by counsel with much force:

1. Has the general council of the city power to regulate the number, and fix the salary, of the officers and members of the police force? The act of July 1, 1893, for the government of cities of the first class, contains the following provisions: "The legislative power of said cities shall be in a board of twenty-four councilmen and in a board of twelve aldermen, which shall be styled the general council." Section 2765. "The general council shall have power to pass, for the government of the city, any ordinance not in conflict with the Constitution of the United States, the Constitution of Kentucky, and the statutes thereof." Section 2783. "Except as otherwise herein provided, the general council may, by ordinance, prescribe the duties, define the term of office, and fix the compensation and the bond and time of election of all officers and agents of the city." Section 2756. "The following executive boards are hereby established in said cities: A board of public works and a board of public safety. . . . " Section 2802. "Said boards shall have the right to employ such officers and agents as may be necessary, and, subject to such limitations as the general council may prescribe, may fix the compensation of such officers and agents." Section 2809. "The board of public safety shall consist of three members. Each member of said board shall receive a salary of not less than two thousand five hundred dollars. The board shall have exclusive control, under the ordinance of the general council, of all matters relating to . . . the police department. . . . Section 2861. If this act had remained unchanged, the power of the general council to pass the ordinance in question would be clear. But the amendatory act of March 28, 1894, provided further, as follows: "The gov-

Neumeyer, Auditor, v. Krakel.

ernment, administration, disposition and discipline of the police department and police force shall be such as the board of public safety may, and is hereby authorized, from time to time by rules, orders and regulations, prescribe, but in strict conformity to the provisions of 'An act for the government of cities of the first class.' " Section 2873. "The police force shall consist of one chief of police, with the rank of colonel; one assistant chief of police, with the rank of major; captains of police, not exceeding in number one to each fifty of the total number of patrolmen; lieutenants of police, not exceeding one to each thirty patrolmen; sergeants of police, not exceeding in number one to each thirty patrolmen; detectives of police, not exceeding twelve in number, one of whom shall be chief of detectives; and patrolmen, not exceeding three hundred in number. The board of public safety shall appoint all the members of the police force. The board of public safety shall have power, and it is authorized to increase the police force by adding to the number of patrolmen from time to time, provided the general council shall have previously made an appropriation for that express purpose. The board of general council may include in the annual tax levy an amount sufficient to provide for the compensation of the additional patrolmen authorized to be appointed pursuant to the provisions of this section. The board of public safety shall maintain and continue a detective force, and shall select and appoint to perform detective duty as many patrolmen, not exceeding twelve in number, as said board of public safety may, from time to time, determine, to be necessary to make this branch of the police force efficient. The patrolmen so selected and appointed shall be called detectives, and shall, while performing such detective duty, be vested with the same authority and be entitled to receive and

be paid such salary as policemen, as the general council may, from time to time, provide. But the board of public safety may, by resolution, reduce to the grade of patrolmen and transfer such detectives, or any number of them, to perform patrol or other police duty, and when so transferred they shall only be entitled to receive and be'paid the same rate of compensation each as patrolmen of police." "The board of public safety shall designate the salary and compensation for each member and officer of said police force, and may fix the salaries and compensation of such clerks and employes, other than policemen, whom they shall be authorized by law to employ, subject, however, to the gross amount of the appropriation made by the general council for the support of said department. . . . The compensation of the members of the police force shall be payable monthly by pay rolls as provided by ordinances." Section 2884.

Without the last section (2884) there would be no doubt of the power of the general council to regulate by ordinances the number of policemen, the officers to be appointed, and the salaries to be paid. But it is argued that this section vests in the board of safety the entire power of determining the salaries of the police force, subject to the amount of the appropriation made by the general council. The act is entitled "An act to amend an act entitled 'An act for the government of cities of the first class, approved July 1, 1893.' " It does not purport to make a change in the legislative power of the city, and does not affect the authority of the general council, except so far as its provisions are in fact inconsistent with the original act. In the first section of it (2873) *supra*, it is provided: "The government, administration, disposition and discipline of the police department and police force shall be such as the board

of public safety may, from time to time, by rules, orders and regulations, prescribe, but in strict conformity to the provisions of 'An act for the government of cities of the first class.'" Thus, while the government and administration of the police force are committed to the board of public safety, they must be in strict conformity to the provisions of the original act, by which the general council, as the legislative power of the city, was empowered to pass all ordinances for its government, not in conflict with law (section 2783), and to prescribe the duties, term of office, and compensation of all minor city officers (section 2756). This power of the council is also recognized in the section next quoted (section 2880). This section, it will be observed, fixes the maximum number of officers and policemen, but not the minimum. It also vests in the board of public safety the appointment of all the members of the police force, but it does not confer on the board the power of fixing the number of the police force within the maximum limits given. It provides that the board of public safety may increase the police force from time to time, "provided the general council shall have previously made an appropriation for that express purpose," and that the patrolmen selected as detectives shall "be paid such salary as policemen as the general council may, from time to time, provide." When the board of public safety is denied power to increase the force, until the general council has previously made an appropriation for that express purpose, the general council, as the legislative branch of the city government, is left, as before, with power to regulate the matter. The provision also, that patrolmen selected as detectives are to be paid such salary as policemen as the general council may, from time to time, provide, is a recognition of the power of the council to regulate the sal-

aries of the police force; for there could, under the stat-
ute, be only twelve detectives, and it can not reasonably be
supposed the Legislature intended that the council might
regulate the salaries of these twelve, but be without power
to regulate the salaries of the remainder.

It is said that the section authorizes the board of safety
to increase the police force by adding to the number of pa-
trolmen above 300, provided the general council shall have
previously made an appropriation for that express pur-
pose, and that this is by implication authority for the board
of safety to regulate the number of patrolmen up to 300.
But we are unable to see that this construction of the stat-
ute can be maintained; for why should the council regulate
the lesser matter of a small increase in the force, and not
the greater matter of the force itself? Besides, this would
require us to add to the words of the statute. The words
of the section are, "The board of public safety shall have
power, and it is authorized, to increase the police force by
adding to the number of patrolmen from time to time."
The statute does not read, "to increase the police force by
adding to the number of patrolmen above three hundred,"
and this was clearly not the intention. The first sentence
of the section fixes imperatively the maximum number of
officers and patrolmen. The next sentence confers on the
board of public safety power to appoint the members of
the police force. Then follows the clause in regard to an
increase of the force. When may the board increase the
force from time to time? The statute answers, "Provided
the general council shall have previously made an appro-
priation for that express purpose." What force may the
board increase from time to time? The context answers,
"The force on hand at the time of each increase." The
power to appoint the force is wholly distinct from the

power to regulate the size of the force. The words, "for that express purpose," can have no reasonable effect, unless they are meant to take away from the board of safety the power to use an appropriation made for a force of a certain size in paying a larger number of patrolmen. More apt words could not have been employed to show that the board of public safety were not to have the power to increase the number of patrolmen without the consent of the council. This power of the council is also recognized in the other section quoted, defining the powers of the board of safety (section 2884) by the words, "whom they shall be authorized by law to employ," and by the concluding words of the section, 'the compensation of the members of the police force shall be payable monthly by pay rolls as provided by ordinances."

Taking the act as a whole, we think it inevitable that this section (2884) is not to be so read as to make it conflict with the other sections quoted. It is essential to the good government of cities that legislative power for local purposes be vested somewhere. Universal experience shows this. In the State government the number of officials and the salaries attached to the various offices are fixed by law. So, in the federal government, congress decides what offices shall exist in the army, navy, or other departments, and the salaries. In the city government the statute prescribes neither the number of certain minor officers nor the salaries, but leaves these to be determined as the local necessities may demand. The legislative branch of the government represents the people most directly, and is the proper power to determine matters of this kind. All the sections we have quoted may be read together. Section 2884, when read with the others, only empowers the board of safety to designate the salary and compensation for each

member and officer of the police force, "whom they shall be authorized by law to employ, subject, however, to the gross amount of the appropriation made by the general council for the support of said department." In other words, the council may regulate by law the number to be employed, and create such offices as are to be filled, and may determine by law the salary attached to each office. When this is done the board of public safety names the appointees, and decides what place each shall fill, and thus designates the salary or compensation of each member of the force; and, in case the council does not by ordinance fix the salary for any officer, the board of public safety may fix the salary, subject to the amount of the appropriation.

It can not be held the Legislature intended that the general council should determine the number of officers and men who were to serve on the police force, and that the board of safety should alone have power to fix their compensation; for, plainly, the two powers go together. The board of safety is nowhere authorized to regulate the number of offices that are to exist. This, being a legislative function, is to be exercised by the general council, unless expressly taken away from them. The power to regulate the salaries of the several offices is equally a legislative function. The question is not what power the amending act confers on the general council. The power in contest was vested in the council when that act was passed, and the only inquiry is, did it take away a power naturally belonging to such bodies and uniformly exercised by them? The council is to levy the taxes and make the appropriations, and it is essential to an intelligent discharge of this duty that they should have power to determine what offices shall exist and the salaries to be paid. This power in all govern-

ments is exercised by the representatives .of the people
who are empowered to levy the taxes. Unless expressly
taken away it belongs to the legislative branch of the city
government, and it is a well-settled rule that an isolated
expression in an act will not ordinarily be so construed as
to conflict with a general legislative policy. In the several
acts for the government of the cities of the State, the sep-
aration and integrity of the legislative, executive, and
judicial departments are carefully guarded. The general
council is not referred to in the amended act, and it can not
be concluded that the Legislature, if it had contemplated
so vital a change in the city government, would have under-
taken to make it in such an obscure way as this. Board of
Council of City of Danville v. Fiscal Court of Boyle Co.
(Ky.), 51 S. W., 157; (21 Ky. L. R., 196) Court-
ney v. City of Louisville, 12 Bush, 424; Phil-
lips v. Pope's Heirs, 10 B. Mon., 172; Sams v.
Sams' Adm'r, 85 Ky., 396, (3 S. W., 593); Henderson's
Adm'r v. Railroad Co., 86 Ky., 389, (5 S. W., 875); Bird v.
Board, 95 Ky., 195, (24 S. W., 118); Bailey v. Com., 11 Bush,
·688. We conclude, therefore, that the ordinance in ques-
tion is not void, but a proper exercise of legislative power
on the part of the city council.

2. Has the general council power by ordinance to require
that all pay rolls must be approved by it before payment?
Section 2743, Kentucky Statutes, is as follows: "In said
cities there shall be a legislative, an executive and a judi-
cial department. Neither of these departments shall exer-
cise any power properly belonging to either of the others,
except as permitted in this act." It is insisted for appel-
lee that the approval of a pay roll is an executive function,
and can not, under the statute quoted, be exercised by the
city council. But it appears from the record that this ordi-
nance has been in force in the city of Louisvile since the

year 1877, and was re-enacted soon after this statute was passed. It was in force when the act of March 23, 1894, was passed, and seems to be distinctly recognized by the concluding words of section 2884, above quoted: "The compensation of the members of the police force shall be payable monthly by pay rolls as provided by ordinances." There are good reasons why the body which levies the tax and makes the appropriations should approve the pay rolls, and thus keep in touch with the administration of the city Government, and this ordinance, having been in force for so many years, and being recognized by the statute, can not be held to be in violation of it. In approving a pay roll, the council acts ministerially, and may by mandamus be required to perform its duty, and approve any proper pay roll which it may reject. By section 2898, the city comptroller has a seat in the general council, with the right to debate on any question pertaining to his department. By section 2901, no claim against the city shall be audited, "unless it is authorized by law or ordinances." If the auditor can issue warrants that are binding on the city, and the treasurer is bound to pay them, although never passed upon by the comptroller, the general council or the mayor, the effect might be ruinous to the city, if the auditor were faithless or imposed upon. By section 2822, the general council must approve all contracts of any of the boards where the amount expended is over $2,000, and it is given power to provide by ordinance that contracts under $2,000 must be first approved by the council. These sections, taken together, seem to us to sustain the ordinance in question.

3. Can the board of public safety use in any year, in addition to the amount appropriated by the general council, any balance in the treasury arising from the levy for previ-

ous years and unappropriated? The general council made an appropriation of $273,000 for the fiscal year ending August 31, 1900. There was in the treasury, in addition to this, $19,964.40 arising from levies made in previous years for the police department, but not appropriated. This balance arose from the fact that under section 2982 the general council can not appropriate more than 95 per cent. of the estimated revenue of the current year, unless more than that shall be actually collected. The $19,964.40 was money collected from the levies of preceding years over and above the 95 per cent. and not appropriated by the general council. The statute provides: "Any unexpended balance of an appropriation in any current fiscal year shall be added by the comptroller to the amount appropriated for the same purpose out of the levy for the succeeding year. Unappropriated balances of levies in any current fiscal year when collected shall be passed by the treasurer to the credit of the same funds for the succeeding year." Section 2982, Kentucky Statutes. The question is, under this statute, whether, when the council has made the annual appropriation of $273,000 for the police department, the board may use in addition, the $19,964.40, which has not been appropriated by the council? If the board may do this, then the amount of its expenditures in the year will not depend upon the appropriation made by the council, but to some extent on what balance may be in the treasury. Substantially the same question was before this court in Board of Education of City of Paducah v. City of Paducah (Ky.), 56 S. W., 149, (21 Ky. L. R., 1650) and we there held that the unappropriated balance in the treasury from a previous levy could not be expended by the board until it was appropriated by the council. That case seems conclusive of this, and we see no reason for changing the rule then announced. The pur-

pose of the statute was to give the council control of the amount to be expended, and if, during the year, money comes into the treasury from an older levy, this must remain until appropriated by the council, and may be taken into consideration in making the levy for the police force for the ensuing year.

4. May the general council cut down the police force? Section 2874, Kentucky Statutes, and section 2882, Id., seem intended to provide, in effect, that the policemen shall not be removed by the board of safety during good behavior. But section 23 of the Constitution forbids the General Assembly from creating any office "the appointment of which shall be for a longer time than a term of years." Under this provision, the Legislature can not give to any city official an office for life or good behavior. Section 93 of the Constitution provides that inferior State officers may be appointed for a term not exceeding four years, and section 107 makes the same provision as to inferior county or district officers. Section 160 provides, after specifying certain officers of towns and cities: "But other officers of towns or cities shall be elected by the qualified voters therein or appointed by the local authorities thereof as the General Assembly may by general law provide; but when elected by the voters of a town or city their terms of office shall be four years, and until their successors shall be qualified." Thus it will be seen that State, county, and district officers, and those elected in cities, are limited to a term of four years, and no office can be conferred for a longer time than a term of years. It was probably not contemplated that appointive officers might hold for a longer term than those elected; for the more important offices are those filled by election, and, as all officers are limited to a term

of years, it would seem, under the Constitution, that ap-
pointive officers can not by statute be given a longer term
than four years. In Commissioners v. George (Ky.), 47 S.
W., 779, (20 Ky. L. R., 938) it was held that
an act of the Legislature creating a six-years term
of office was in conflict with the Constitution, in
so far as it conferred a term of over four years, but
that the officer held under the statute for the constitu-
tional term. It would seem that the same rule should be
applied to the statute before us, and that it is not wholly
void, but that the appointees of the board of public safety
may hold during good behavior, to the extent of the term
limited by the constitution, and can not be removed in the
meantime by the board so as to put others in their places,
except as provided by law. But this question is not pre-
sented.

The power to abolish an office is wholly different from
the power to discharge the incumbent. Sections 2874, 2882,
Kentucky Statutes, are only limitations upon the power of
the board of safety to make changes in the personnel of
the force. They do not purport to restrict the legislative
power of the general council in regulating what offices
shall exist. The council is not named in these sections,
and there is nothing in the act to show that the framers of
it had in mind the restriction of the law-making authority
of the city. The city council, in the exercise of its legisla-
tive power, may abolish any city office which it has discre-
tion to create, at any time when, in its judgment, the good
of the city may so require. The council might, therefore,
abolish the office of two captains of police, or of a certain
number of lieutenants, sergeants, or patrolmen, and the
incumbents of the offices so abolished would have no cause
of complaint against the city. Otherwise, the city might
be compelled to maintain a large police force indefinitely,

which a change of circumstances had for years rendered unnecessary. Dill. Mun Corp., sections 168-170; State v. Douglas, 7 Am. Rep., 87; State v. Pinkerman (Conn.) 28 Atl., 110, (22 L. R. A. 653.) It results that appellee had no cause of action upon the facts shown, and was not entitled to the mandamus sought. Judgment reversed, and cause remanded, with directions to the court below to dismiss appellee's petition.

Chief Justice Paynter's dissenting opinion:

The court concludes that there is no conflict between the act of 1893, enacted for the government of cities of the first class, and the amendment thereto, passed in 1894. I am of the opinion that the conclusion of the court in this respect is incorrect. It is unnecessary to make an argument to show that, if there is a conflict in the two acts, the act of 1894 must control, and be held to repeal that part of the act of 1893 inconsistent therewith. By section 2765, Kentucky Statutes, the legislative power of the city of Louisville is in its general council. By section 2783, it is authorized to pass for the government of the city any ordinance not in conflict with the Constitution of the United States, the Constitution of Kentucky, and the statutes thereof. Section 2756 provides that "except as otherwise herein provided, the general council may by ordinance prescribe the duties, define the term of office, and fix the compensation and the bond and time of election of all the officers and agents of the city." Section 2802 creates the board of public safety. Section 2809 provides: "Said boards shall have the right to employ such officers and agents as may be necessary, and, subject to such limitations as the general council may prescribe, may fix the compensation of such officers and agents."

Section 2861 gives the board of public safety exclusive
control, under the ordinance of the general council, of all
matters relating to the fire department, the police de-
partment, etc.   By reason of section 2783, authorizing the
general council to pass ordinances not in conflict with the
Constitution of the United States, the Constitution of
Kentucky, and the statutes thereof, any ordinance which
existed before the passage of that act, or one which was
enacted subsequent thereto, if it is in conflict with the
Constitution of the United States, the Constitution of
Kentucky, and the statutes thereof, is void.   Section 2756,
authorizing the general council, by ordinance, to prescribe
the duties, define the terms of office, and fix the compensa-
tion and the bond and time of election of all officers and
agents of the city, except as otherwise provided, does not
control, if the statute confers upon any other authority
the right to appoint certain officers or agents; and fix
their compensation.   The plain letter of the statute re-
stricts the right of the general council in this regard to
officers and agents, the appointment, election, and com-
pensation of which is not regulated by other provisions
of the statute.   That section could not have reference to
such officers and agents needed by the board of public
safety in the discharge of its duties, because section 2809
provides that it shall have the right to employ such of-
ficers and agents so needed by it.   There is but one qual-
ification of the rights of the board in this regard, and
that is, in fixing the compensation for such officers and
agents as it may employ, it must do so subject to such limi
tations as the general council may prescribe.   Under sec
tion 2861, the board of public safety was given the ex-
clusive control, under the ordinance of the general council,
of all matters relating to the fire department, the police

department, etc. This section seems to have given to the board the exclusive control of the police department, but that control could only be exercised under the ordinance of the general council. Of course, the meaning of that provision of the section which requires them to control it under the ordinance of the general council did not confer upon the general council the right to enact any law inconsistent with the provisions of the statute governing cities of the first class; for that section must be read in connection with the other section, which prohibits the general council from enacting any law inconsistent with the Constitution or any statute. There seems to be nothing in that section, or any section of the act of 1893, which conferred upon the board of public safety the right to fix the compensation of policemen; neither was there anything in the act which expressly said that the common council could do so; but, as the control of the police department was conferred upon the board of public safety under the ordinance of the general council, it is fair to conclude that the general council, as there was no statutory enactment upon the subject, could fix the compensation of the police force by ordinance. If section 2809 had reference to patrolmen, then express authority was conferred upon the general council to employ police patrolmen and fix their compensation.

My opinion is that the officers and agents referred to in that section are the clerical force and employes needed in and about the office of that board, and necessary for the performance of its duties, having no reference whatever to the police force of the city. Sections 2765, 2783, 2756, 2802, and 2861 are analyzed to show the authority of the board of public safety and general council before the act of 1894. This act made a radical change in the law

with reference to the control of the police department in the matter of controlling and fixing the compensation of patrolmen. It increased the authority of the board of public safety, and limited that of the general council with reference thereto. If the Legislature had intended that the board of public safety could only exercise its control of the police force under the ordinance of the common council, it was wholly unnecessary to enact section 2873, the first section of the act of March 23, 1894, which reads as follows: "The government, administration, disposition and discipline of the police department and police force shall be such as the board of public safety may, and is hereby authorized from time to time by rules, orders and regulations, prescribe, but in strict conformity to the provisions of 'An act for the government of cities of the first class.'" This section confers authority and power upon the board of public safety to do certain things. Previous to that time the power was limited in its exercise by the ordinances of the city. This section does not make the board subject to the ordinances of the general council, but to an act for government of cities of the first class; meaning that the board of public safety should be controlled by any provision of that act which in terms pointed out any duty for it to perform in the management of the police department. The act of 1893 prescribes the qualifications of a patrolman; places the police force under the orders and direction of the mayor, in times of peril, riots, extensive conflagration, disorder, or the apprehension thereof; authorizes the board of public safety to appoint special police; prohibits a policeman from receiving, without the consent of the board, gratuity or compensation in addition to his salary for any service he may render. These are some of the provisions of the act of 1893 which the

Legislature intended to preserve in the act of 1894 when it said the government, administration, disposition, and discipline of the police department and police force should be such as the board of public safety might prescribe, in conformity to the provisions of "An act for the government of cities of the first class." It did not intend to preserve in the general council a power which the language of the amendment shows was intended to be taken from it and placed in the board of public safety. It would violate every rule for the interpretation of statutes to hold that an amendatory statute intended to preserve all the provisions of the act of which it is an amendment, although some of the provisions of the amendment were inconsistent therewith. It would have been folly for the Legislature to declare that the government, administration, disposition, and discipline of the police department and police force should be such as the board of public safety may, and was thereby authorized from time to time, by rules, orders, and regulations, prescribe, and at the same time leave it in the power of the general council to compel the board to control the police force in whatever way it might by ordinance prescribe. The amendment of 1894 gives the board of public safety the right to remove policemen upon charges; to see that the ordinances are enforced which are not in conflict with the law; to establish, provide, and furnish stations and station houses for the accommodation of members of the police force, and place for the temporary detention of persons arrested; to furnish horses and wagons, to be known as "patrol wagons," which horses and wagons were placed under its exclusive control; to establish mounted patrol, and procure, use, and employ as many horses and equipments as shall be requisite for the purpose; to prescribe and

cause to be used and teams and vehicles required; to make promotions of officers and members of the police force; to forfeit and withhold their pay for a specified time; to suspend without pay, and to withhold their pay, on account of absence for any cause without leave. There are other powers vested in it by the amendment of 1894 which are not necessary here to enumerate. Section 2884, Kentucky Statutes (being part of the act of 1894), reads as follows: "The board of public safety shall designate the salary and compensation for each member and officer of said police force, and may fix the salaries and compensation of such clerks and employes, other than policemen, whom they shall be authorized by law to employ, subject, however, to the gross amount of the appropriation made by the general council for the support of said department. The compensation of the members of the police force shall be payable monthly by pay rolls as provided by ordinances." If it was intended, as held by the court, that the general council could fix the compensation of the patrolmen under the act of 1893, why was it provided in the act of 1894 that the board of public safety "shall designate the salary and compensation for each member and officer of the police force?" Why did the Legislature do the idle thing of saying the authority was vested in the board of public safety to regulate their salary and compensation, and at the same time intend that such authority should be exercised by the general council? To say that was the intention of the Legislature is to say that it used language plain and unambiguous, with a definite and certain meaning, to convey exactly the opposite meaning from that which it imports. It is to say that the Legislature, when it said that the board of public safety should designate salaries of policemen, meant that the general council

should do so.  If it was certain, under the act of 1893,
as held by the court, that the general council had the
authority to fix the salaries of policemen, why did the
Legislature want to again confer that power upon it by
an amendatory act?  But the strange part of it is, in or-
der to confer that authority upon the general council
in the amendatory act, it in terms said that the board
of public safety was authorized to do that very thing.
If this be a proper method of conveying ideas or express-
ing an intention, it would follow that if one desire to de-
scribe a black horse to his friend, he would say it was
covered with a perfect coat of white hair.  As the stat-
ute requires that the board of public safety shall desig-
nate the salaries and compensation of patrolmen, it would
seem that no other authority could do so.  To designate sal-
aries and compensation certainly does not mean that the
board is to designate patrolmen to earn salaries which
have been designated by the general council.  Independ-
ent of the language of the clause in question, I would con-
clude that it did not have such a meaning, because, by
an express provision of the statute, the board is author-
ized to appoint the patrolmen.  If it was intended by the
Legislature that the general council should designate the
salaries of patrolmen, one, though not of an inquiring
bent of mind, would ask why it expressly said the board
of public safety should do so.

The court asks the question, may the general council
cut down the police force?  It then proceeds to discuss it
as if the answer to same depended upon showing that
the Legislature can not give any city official an office
for life or good behavior.  That is not the question in-
volved in this case.  The question here is not whether
the Legislature can give a city official an office for life

or good behavior, but whether the general council can reduce the police force. , A constitutional question is not involved, but the question is whether the Legislature has conferred upon the general council or the board of public safety power to determine what number of policemen shall be employed. That the general council has the right to say what amount of taxes shall be levied and collected for the police department is not questioned. It is equally as plain under the law that the board of public safety shall say what number of patrolmen shall be paid out of the fund provided by the general council with this limitation, to wit, that the patrolmen whom they appoint shall not exceed 300. The general council might, by making a small or insufficient appropriation, render it necessary for the board of public safety to reduce the compensation of patrolmen below living wages. From the power thus existing in the general council to starve or cripple the executive department of the government, the right does not arise to invade the province of the police department of the executive branch of the Government, and usurp functions expressly conferred upon that department. The legislative will and intention as to who shall fix the number of policemen and appoint them is clearly expressed in section 2880, which reads as follows: "The police force shall consist of one chief of police, with the rank of colonel; one assistant chief of police, with the rank of major; captains of police, not exceeding in number one to each fifty of the total number of patrolmen; lieutenants of police, not exceeding one to each thirty patrolmen; sergeants of police, not exceeding in number one to each thirty patrolmen; detectives of police, not exceeding twelve in number, one of whom shall be chief of detectives; and patrolmen not exceeding three hundred

in number. The board of public safety shall appoint all
the members of the police force. The board of public safety
shall have power, and it is authorized to increase the po-
lice force by adding to the number of patrolmen from time
to time, provided the general council shall have previous-
ly made an appropriation for that express purpose. The
board of general council may include in the annual tax
levy an amount sufficient to provide for the compensa-
tion of the additional patrolmen authorized to be appoint-
ed pursuant to the provisions of this section. The board
of public safety shall maintain and continue a detective
force, and shall select and appoint to perform detective
duty as many patrolmen, not exceeding twelve in num-
ber, as said board of public safety may, from time to
time, determine to be necessary to make this branch of the
police force efficient. The patrolmen so selected and ap-
pointed shall be called detectives, and shall, while per-
forming such detective duty, be vested with the same
authority and be entitled to receive and be paid such sal-
ary as policemen, as the general council may, from time
to time, provide. But the board of public safety may,
by resolution, reduce to the grade of patrolmen and trans-
fer such detectives, or any number of them, to perform
patrol or other police duty, and when so transferred they
shall only be entitled to receive and be paid the same rate
of compensation each as patrolmen of police." This sec-
tion fixes the number of officers the police force shall
have, and the number of detectives "and patrolmen, not
exceeding three hundred in number," and provides that
the board of public safety shall appoint them. It further
provides that "the board of public safety shall have power,
and it is authorized to increase the police force by adding
to the number of patrolmen from time to time, provided

the general council shall have previously made an appro-
priation for that express purpose." It also provides that
the general council may "include in the annual tax levy
an amount sufficient to provide for the compensation of the
additional patro'men authorized to be appointed pursuant
to the provisions of this section."

There is no limitation on the right of the board of pub-
lic safety to appoint patrolmen within the number of
300. It can not appoint more than that number unless the
general council has previously made an appropriation for
that express purpose. To have more than 300 patrolmen,
it requires the concurrent action of the board of public
safety and the general council. It is plain from that sec-
tion that the general council can not appoint patrolmen,
nor control the number, within the 300 limit. It can on-
ly prevent an increase in the number over 300 by refusing
to make an appropriation to meet such an expense. The
court draws an unauthorized conclusion from the pro-
vision that the board of public safety can only increase
the force when the general council has made an appro-
priation therefor; for it says: "When the board of pub-
lic safety is denied the power to increase the force until
the general council has previously made an appropriation
for that express purpose, the general council, as the leg-
islative branch of the city government, is left, as be-
fore, with power to regulate the matter." The court is
referring to the right of the general council to reduce the
number of patrolmen. The reasoning is certainly very
unsound, when the court considers that, because the law
only authorizes the board of public safety to increase
the number of patrolmen when an express appropriation
has been made therefor, the general council can reduce
the number which the law expressly authorizes the board

of public safety to appoint and maintain out of the general appropriation for that purpose. The provision to which so much importance is attached only imposes a condition upon which the increase of the number of patrolmen shall be made. It is not a grant of power to the general council, but to the board of public safety, to be exercised only on a contingency which the general council can create. Another deduction is drawn from a provision of section 2880, which is not supported by the letter or spirit of it. The court says: "It can not be reasonably supposed that the Legislature intended that the council might regulate the salaries of these, but be without power to regulate the salaries of the remainder." The court referred to that part of section 2880 which reads as follows: "The board of public safety shall maintain and continue a detective force, and shall select and appoint to perform detective duty as many patrolmen not exceeding twelve in number, as said board of public safety may, from time to time, determine to be necessary to make this branch of the police force efficient. The patrolmen so selected and appointed shall be called detectives, and shall, while performing such detective duty, be vested with the same authority and be entitled to receive and be paid such salary as policemen, as the general council may, from time to time, provide. But the board of public safety may, by resolution, reduce to the grade of patrolmen and transfer such detectives, or any number of them, to perform patrol or other police duty, and when so transferred they shall only be entitled to receive and be paid the same rate of compensation each as patrolmen of police." The detective force, not exceeding twelve, are independent of, and in addition to, the patrolmen which the board may appoint, and, while performing detective duty, are vested with the same au-

thority, and are entitled to receive and be paid such salaries as policemen as the general council may, from time to time, provide. The latter clause relates alone to the twelve detectives. Whatever may be meant by it, in view of the preceding part, which says they shall be paid such salaries as policemen, it is difficult to tell, unless it means to impose upon the general council the duty of providing by appropriation for the salaries of such detectives. It might with some plausibility be argued that the general council could fix the salaries of such detectives while acting as such, as the following clause of the section provides that the board of public safety may, by resolution, transfer such detectives, or any number of them, to perform patrol or other police duty, and when so transferred they shall only be entitled to receive and be paid the same rate of compensation each as patrolmen of police. The question arises, if they have not been authorized while acting as detective to get any greater salary than policemen, why provide that when they are placed on police duty they are to have the rate of compensation each as patrolmen of police? As the language, "as the general council may, from time to time, provide," relates exclusively to the twelve detectives, it is not necessary to make further suggestions as to what is its meaning, as I understand there is no question here of the right to reduce the detective force. But the most reasonable interpretation of it is that such a detective force, not to exceed twelve in number, shall be maintained, as the general council may provide the means to pay them.

Unexpended balance: The court holds that unexpended balances of appropriations for police purposes must be reappropriated before they can be used by the board of public safety to pay the expenses of the police depart-

ments of the cities, and as authority for so holding cites the case of the Board of Education of City of Paducah v. Paducah (Ky.) 56 S. W., 149. (21 Ky. L. R., 1650) A question similar or analogous to the one here involved was not decided by the court in that case, neither was one decided which is akin to it. By virtue of the charters of ,cities of the third class it was made the duty of their boards of education to estimate and report to the city council the amount of money needed to defray the expenses of the school for the current year, and it was the duty of the city council to make a' levy and raise the necessary fund. It appeared in that case that the city council did so, but more was collected than was needed for the purpose, and the council refused to pay the unexpended balance to the school board. The school board instituted an action to recover it, and the court decided that, as the board had received all the money it had demanded, and to which it was entitled, notwithstanding there was an excess collected, it was not entitled to recover it from the city. In that case unexpended balances had never been paid to the board of education, and the purpose of the suit was to recover it. Neither was the question before the court as to what should be done with the excess that was in the hands of the city, for it said: "It is not important and would not be proper, under the pleadings in this proceeding, to determine the disposition that should be made by the city council of the surplus money so illegally collected." In this case the money collected under the levy made by the general council of Louisville was credited to the board of public safety, as the law prescribed that it should remain as a separate fund in the hands of the treasurer of the city, and it further provides that it shall not be diverted from the

board or used by the mayor or general council for any other purpose. Whatever unexpended balance of taxes that were collected for the purpose of paying the police force is to the credit of the board of public safety. In the case of Board of Education of City of Paducah v. Paducah, there was no statute providing what should be done in the case of unexpended balances, but the statute did contemplate that the board should only receive an amount from the city which was sufficient to pay the expenses of the city school. Section 180 of the Constitution provides as follows: "The General Assembly may authorize the counties, cities or towns to levy a poll tax not exceeding one dollar and fifty cents per head. Every act enacted by the General Assembly, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which such tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose." The Legislature, knowing that there might be deficits and unexpended balances of appropriations, enacted section 2982, Kentucky Statutes (Acts 1898, p. 108), which reads as follows: "In no fiscal year shall the general council appropriate or expend, or contract for the expenditure, of more than ninety-five per cent. of the estimated revenue of the current year, unless more than that shall be actually collected; and if in any year less than ninety-five per cent. of the estimated revenue shall be collected, any deficiency within ninety-five per cent. may be provided for in the levy of the next year, and shall be called the 'deficit tax.' Any unexpended balance of an appropriation in any current fiscal year shall be added by the comptroller to the amount appropriated for the same

purpose out of the levy for the succeeding year. Unappropriated balances of levies in any current fiscal year when collected shall be passed by the treasurer to the credit of the same funds for the succeeding year." This section contemplated that unexpended balances of taxes levied and collected for a specified purpose should be held and used for that purpose. It is not in conflict with the Constitution for the Legislature to regulate the use of these unexpended balances, in so far as its enactments provided they shall be used for the purpose for which they were levied and collected. The section of the stat-ute quoted gives practical force and operation to section 180 of the Constitution. My opinion is that it is not necessary to have a reappropriation of the unexpended balances of the fund levied for police purposes, because the Legislature has obviated that necessity by appropri ating or directing how they shall be used.

Recurring to the matter hereinbefore discussed, I desire to add that the scheme of the act of 1894 was to take from the legislative department of the city government the control of the police department, and place it within the control of the board of public safety, that being part of the executive branch of the government. It was deemed wise that the legislative department should provide the means to pay the expenses of the police force, but the responsibility for the appointment of patrolmen and their officers, and the fixing of the compensation that each should receive, was placed upon the board of public safety. The act not only does this, but imposes many duties in addition thereto that were formerly imposed by law upon the general council. In my opinion, the court has not only reached an erroneous conclusion upon the

issues raised, but has considered and decided a question not involved on this appeal. I dissent from the opinion of the court.

Judges White and Guffy concurring.

Petition for rehearing by appellee overruled.