Case 107.—SEPARATE SUITS BY THE CUMBERLAND TELE-
PHONE & TELEGRAPH CO. AND THE LOUISVILLE &
NASHVILLE RAILROAD CO. AGAINST W. A. HOPKINS,
POLICE JUDGE OF THE CITY OF EMINENCE, &c., TO
PROHIBIT THE ENFORCEMENT OF AN OCCUPATION
TAX.—January 31.

## Cum. Telep. & Teleg. Co. v. Hopkins, Police Judge, &c. Louisville & Nashville R'y Co. v. Same.

Appeals from Henry Circuit Court.

R. F. PEAK, Circuit Judge.

From a judgment dismissing their petitions, the plaintiffs appeal. Reversed.

1. Municipalities—Ordinances — Railroads — Franchise — License
Fees—Double Taxation—Constitution — Uniformity—By sec-
tion 181 of the State Constiution the general assembly may,
by general law, delegate the power to towns, cities and other
municipal corporations, to impose and collect license fees
on * * * franchises, trades, occupations and professions.
By Ky. Stats., sec. 3627, sub-sec. 4, cities of the fifth class
may collect license fees on all franchises, trades and occu-
pations. By secs. 4096-4104, Ky. Stats., railroads are re-
quired to pay taxes on their tangible property; and by sec.
4077, Ky. Stats., an additional or franchise tax on all their
intangible property, which is valued by the State Board of
Valuation and Assessment, which valuation is made the
basis for municipal taxation in every municipality in which
the corporate franchise may be exercised. An ordinance of
the city of Eminence, a city of the fifth class, through which
said railroad passes, imposing a license fee of $25 per annum
upon the business of selling railroad tickets or for handling
freight for pay in said city, is invalid in that it authorizes
the city to tax the same privilege twice for the same year
as against the same owner, and is in violation of sec. 171 of
the Constitution, which requires that taxes shall be uniform
upon all property subject to taxation.

2. Same—Telephone Companies—Sale by City of Privilege—Additional Charge—The same ordinance requiring the Cumberland Telephone and Telegraph Co. to pay a license fee of $50 per annum upon the business for handling for pay telephone messages in the city is also invalid for the same reason as stated above, as well as for the additional reason, that after having sold the telephone company the privilege of putting up and operating its line and conducting its business in said city, the city can not afterwards, without the consent of the company. impose an additional charge for the identical privilege for which it has been paid.

HENRY L. STONE for appellant L. & N. R. R. Co.

### POINTS AND AUTHORITIES CITED.

1. The general assembly has not delegated to cities of the fifth class the power to impose a license tax on railroad companies. (Cincinnati, New Orleans & Texas Pacific R. R. Co. v. Commonwealth, 81 Ky., 492; Kentucky Railroad Tax Cases, 115 U. S., 322; General Statutes, Ed. 1888, chap. 92, art. 3, sec. 1, p. 1042; sec. 4096, Ky. Stats.; sub-sec. 4, sec. 3637, Ky. Stats.; Merced County v. Helm, 102 Cal., 159; Chicago, R. I. & P. Railway Co. v. Ottumwa, 112 Iowa, 300; Cincinnati v. Conover, 55 Ohio St., 82; Memphis v. Bing, 94 Tenn., 644; McCutcheon v. Pac. R. R., 72 Mo. App., 271; McNally v. Field, 119 Fed., 445; Sewall v. Jones, 9 Pick., 412, 414; Boyd v. Hood, 57 Pa. St., 98, 101; sec. 541, vol. 2, 2d Ed., Lewis' Sutherland on Statutory Construction, and notes thereto; Nashville, C. & S. L. Railway Co. v. Jones, 100 Tenn., 512; Hand v. Cole, 88 Tenn., 400; Greenhow v. James, 80 Va., 636; Minet v. Lehman, 20 Beav., 269; Harrison v. Commonwealth, 83 Ky., 170.)

2. The ordinance in controversy is invalid because it imposes double taxation on the franchise of the appellant railroad company, so far as the same is exercised in the city of Eminence. (Henderson Bridge Co. v. Commonwealth, 99 Ky., 641; Adams Express Co. v. Ky., 166 U. S., 171; Session Acts 1904, p. 95; City of Louisville v. Louisville Railway Co., 26 Ky. Law Rep., 380; Wilmington Railroad v. Reid, 13 Wall., 268; Hamilton Co. v. Massachusetts, 6 Wall., 638; Commonwealth v. Delaware, Susquehanna & Schuykill R. R. Co., 165 Pa., 44; sec. 4077, Ky. Stats.; sec. 4022, Ky. Stats.; Frankfort, Lexington & Versailles Turnpike Co. v. Comonwealth, 82 Ky., 389; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 168.)

JOHN HARDING and T. B. HARRISON, JR., for appellant L. & N. R. R. Co.

### POINTS AND CITATIONS.

1. Railroad property and franchises have, by the Constitution and Statutes of Kentucky, been taken out of the general class of property and put in a class by themselves, and provision has been made for the assessment and collection of taxes thereon different from the manner in which the assessment and collection of taxes on property generally is made; and no tax—either an ad valorem, franchise, or license—can be assessed against or collected on the property and franchises of a railroad company except in the manner provided therefor by the Legislature. (Applegate v. Ernst, 3 Bush, 648; 1 Acts 1876, p. 78; 1 Acts 1878, p. 82; 1 Acts 1881-2, 66; C., N. O. & T. P. R. Co. v. Commonwealth, 81 Ky., 492-503; Constitution, secs. 181 and 182; Ky. Stats., secs. 4096 et seq., 4077 et seq: L. & N. R. R. Co. v. City of Louisville, 16 Ky. Law Rep., 796; Commonwealth, By, &c. v. Union R. T. Co., 26 Ky. Law Rep., 23; Vanceburg & Stout's Lane Turnpike v. Maysville & Big Sandy R. R. Co., 63 S. W., 749.)

2. A license tax and a franchise tax are, in effect, the same—each being a tax upon the privilege of doing business. (Ky. Stats., 4077; Southern Building & Loan Association v. Norman, 98 Ky., 294; Fidelity & Casualty Co. v. City of Louisville, 20 Ky. Law Rep., 1785; Constitution, secs. 171 and 174; Commonwealth, By, &c. v. Bank of Commerce, 26 Ky. Law Rep., 407.)

3. A city of the fifth class has no constitutional or legislative authority to impose a license tax upon a railroad company. (Ky. Stats., sec. 3011; Acts 1904, p. 93-99; Ky. Stats., sub-sec. 2, of sec. 3058; Ky. Stats., sec. 2984; Aetna Life Ins. Co. v. Coulter, Auditor, 25 Ky. Law Rep., 193.)

4. The validity or constitutionality of an ordinance of a city of the fifth class must be tried by writ of prohibition. (Ky. Stats., sec. 3639.)

WILLIS & TODD for appellant Cumberland Telephone and Telegraph Co.

### SUMMARY.

1. A writ of prohibition is the proper method to test the validity of this ordinance. (Sec. 479, Civil Code; title 10, chap. 5, Civil Code; sec. 3629, Ky. Stats.; Bybee v. Smith, 22 Ky. Law Rep., 467; Campbellsville Telephone Co. v. Patterson, Judge, 24 Ky. Law Rep., 832.)

2. The ordinance is invalid because it is a law impairing the obligation of a contract. (Commonwealth v. Pearl Laundry Co., 105 Ky., 263; Louisville Tobacco Warehouse Co. v. Common-

wealth, 106 Ky., 168; Fidelity & Casualty Co. v. City of Louisville, 106 Ky., 208; City of Covington v. Woods, &c., 98 Ky., 345; City of Louisville v. Louisville Railway Co., 26 Ky. Law Rep., 378; Smith's Modern Law of Municipal Corporations, secs. 519 and 532; The People v. West Division Railway Co., 118 Ill., 113; New Jersey v. Yard, 95 U. S., 104; New Orleans R. R. Co. v. Delamore, 114 U. S., 501; New Orleans Water Works Co. v. Rivers, 115 U. S., 674; Louisville Gas Co. v. Citizens' Gas Co., 115 U. S., 683; Walla Walla City v. Walla Walla Water Co., 172 U. S., 1; St. Louis v. Western Union Telegraph Co., 148 U. S., 92; Postal Telegraph Cable Co. v. Charleston, 153 U. S., 692; Northwestern Telephone Exchange Co. v. Minneapolis, 53 L. R. A., 175; City of Louisville v. Wible & Willinger, 84 Ky., 290.)

3. This ordinance is a revenue ordinance, and not a police regulation. (Vol. 4, Blackstone's Commentaries, 162; Dillon's Municipal Corporations, vol. 1, sec. 141; sec. 181, Constitution of Ky.; sec. 3637, Ky. Stats.; Standard Oil Co. v. Commonwealth, 26 Ky. Law Rep., 985; State v. Wheelock, 30 L. R. A., 430.)

4. The ordinance is unreasonable and oppressive. (Hall v. Commonwealth, Use, &c., 101 Ky., 382; Dillon's Municipal Corporations, 328, 321, 319, and the case cited in 30 L. R. A., 429; St. Louis v. Western Union Telegraph Co., 148 U. S., 92; Smith's Modern Law of Municipal Corporations, secs. 425, 527; Livingston v. City of Paducah, 80 Ky., 556.)

G. ALLISON HOLLAND and D. A. SACHS for appellees.


### POINTS AND AUTHORITIES.

1. No writ of prohibition can be granted against a municipal corporation. (Civil Code, sec. 479; Patton v. Stephens, 14 Bush, 324; Campbellsville Telephone Co. v. Patterson, 24 Ky. Law Rep., 834; sec. 3639, of Ky. Stats.)

2. The petition states merely conclusions of law. A demurrer admits only as true averments of facts well pleaded and never legal conclusions. (Norman v. Ky. Board of Managers, 93 Ky., 547.)

3. The right to impose a license on franchises. (Ky. Stats., sec. 3637, sub-sec. 4; secs. 174 and 181 of Ky. Constitution; Levi v. City of Louisville, 97 Ky., 394; Cooley on Constitutional Limitations [5th Ed.], 279; Elliott v. City of Louisville, 101 Ky., 262; Ky. Stats., 3011-3012-3058; Dillon on Municipal Corporations, sec. 793; Woodruff v. City of Louisville [Mss. Opinion]; Bullitt v. City of Paducah, 8 Ky. Law Rep., 870; 21 Am. & Eng. Ency., 780 [2d Ed., 775-779]; Kniper v. Louisville, 7 Bush, 599; Bowser v. Thompson, 103 Ky., 331; City of Carlisle v. Heckinger, 103 Ky.,

381; Frank Ford v. Philadelphia, 98 Am. Dec., 242; Newport v. South Covington Railway Co., 89 Ky., 29; Livingston v. City of Paducah, 80 Ky., 657; Louisville City Railway v. City of Louisville, 4 Bush, 478; Cobb v. Durham County, 122 N. C., 307; Newport Light Co. v. City of Newport, 14 Ky. Law Rep., 464; Constitution of Ky., secs. 174, 181, 182; Ky. Stats., secs. 4077-4091 inclusive; 4096-4104 inclusive; City of Covington v. Woods, 98 Ky., 344, 346, 347; Postal Telegraph Cable Co. v. Charleston, 153 U. S., 692; Wiggins Ferry Co. v. East St. Louis, 107 U. S., 365; City of Louisville v. Louisville Railway Co., 26 Ky. Law Rep., 378.)

4. The definition of franchise, as now fixed by law. (Henderson Bridge Co. v. Commonwealth, 99 Ky., 638; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 167-168; Louisville & Jeffersonville Ferry Co. v. Commonwealth, 104 Ky., 726; Fidelity & Casualty Co. v. City of Louisville, 106 Ky., 211.)

5. The test of the ordinance is not as to oppression. But as to validity. (Hall v. Commonwealth, 101 Ky., 382; Mason v. Trustees of Lancaster, 4 Bush, 406.)

6. All exemptions from tax or license under charters granted to corporations are repealed by the present Constitution. (City of Newport v. Masonic Temple, 103 Ky., 592.)

7. This license is the exercise of police power. (City of Fort Smith v. Hunt, 82 Southwestern Rep., 163; Black on Constitutional Law, Ed. 1897, 334 and 615.)

OPINION BY JUDGE O'REAR—Reversing.

The two cases styled above present a common question, though the former presents in addition a single other question for decision. The cases were heard together in this court. Appellant telephone company operated a telephone exchange in the town of Eminence, in connection with its long distance telephone service, extending through that town to other and remote points in and out of this State. Appellant, Louisville & Nashville Railroad Company, is a chartered railroad corporation, created by the laws of this State and operating lines of railroad in and out of the State, one of which passes through the town of Eminence. Eminence is a city of the fifth class of this State. Among its corporate pow-

ers conferred by the Legislature is section 3637, sub-section 4, Kentucky Statutes 1903, which reads:· "To impose and collect license fees and taxes on stock used for breeding purposes, and on all franchises, trades and occupations," but "not in conflict with the Constitution or laws of this State or of the United States." This power was expressly allowed by the Constitution by section 181 of that instrument, which is as follows: "Section 181. The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by general laws confer on the proper authorities thereof respectively the power to assess and collect such taxes. The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions." The city of Eminence by its council enacted ordinances imposing a license fee of $50 per annum upon the business for handling for pay telephone messages in the city, and upon the business of selling railroad tickets in the city of Eminence or for handling freight for pay in said city an annual license fee of $25. Penalties were provided for carrying on either business without first having paid the license fees. These suits were brought against the police judge and the city for a writ of prohibition to test the constitutionality of the ordinances, each appellant being proceeded against for their violation. The circuit court dismissed the petitions, thereby holding the ordinances valid.

Railroad and telephone companies are required to pay to the State a franchise tax, as well as being required to pay a franchise tax to each county, city or town in which it may be exercised, if such municipality imposes an ad valorem tax. (Section 4077, Ky. Stats. 1903; section 174, Constitution.) These companies are included in what are called "public service corporations," exercising powers and having privileges not enjoyed by natural persons or other corporations. The main point of contention is, what is the franchise upon which these taxes are imposed? A corporation's franchise may be one thing or another. The word is not always used with reference to the same meaning. It is sometimes regarded as the mere right to be a corporation. Again, it is treated as the right to do the particular and peculiar business for which the corporation was created. It is also spoken of as the right to do its business in a certain locality, as, for example, where the Constitution requires certain franchises to be sold by cities and towns. (Section 164, Constitution.) The other two qualities of a corporate franchise may have existed before the acquisition of the latter, and are, therefore, in a sense quite distinct from it. For the purposes of taxation, it may be all of them and more. (Henderson Bridge Co. v. Commonwealth, 99 Ky., 623, 31 S. W., 486, 17 Ky. Law Rep., 389, 29 L. R. A., 73.) While corporate franchises have long been recognized factors of incorporated beings, they have only recently come to be regarded as separate subjects of taxation. In the rapid development of these artificial creatures of the law (corporations) as means of holding and using property in active business, the corporate franchise has come to have a recognized value of enor-

mous magnitude, when viewed in the aggregate. It
is not the least—indeed, frequently is the greater
—element of the corporation's wealth. That it should
be taxed, should be made to bear its share of the pub-
lic burden, together with all other wealth, is fun-
damentally true in justice and in political economy.
So far, no exact definition of it has been given upon
which the courts have felt willing to finally rest the
matter. And perhaps it is well enough for the pres-
ent that this is so. Still certain qualities of the cor-
porate franchise are so well known and classified as
to be beyond dispute as being elements of its taxa-
ble value. The mere right to be a corporation is
taxed, in the exacting of the organization tax upon
its creation. This is collected once, and absolutely
without reference to its property or whether it ever
engages in the business contemplated by its articles.
(Section 4226, Ky. Stats. 1903.) The right of certain
corporations to do business in a city which it must
acquire (if acquired since the present Constitution)
by purchase of the franchise from the city, includes
the compensation for occupying the public thorough-
fares of the city. But it also may include more than
that, which will be further noticed in this opinion.
Each of these are qualities of the general corporate
franchise. Yet, as used in the taxing statute of this
State, the word has a more comprehensive meaning.
It is treated as property. It is property. It adds
materially to the value of the tangible property of
the corporation. The right to exercise the powers
allowed to the corporation by law, the peculiar and
exceptional privileges it enjoys, partaking partially
of the quality of sovereignty, give to its use of its
tangible property, as well as to its intangible prop-
erty comprised within its capital stock, a value which

. otherwise could not attach to them, so that this privileged use becomes to the visible assets of the corporation what the leaven is to the loaf. While it may not be laid hold of separately, it is quite capable of being conceived and valued as a thing worth so much money. This value will depend largely upon its money earning capacity as it may be employed, and depends at last upon its being exercised. Unless used substantially as outlined in the articles under which it is created, it could scarcely be said to have a money value at all. For, unlike tangible property, or even choses in action, it can not be sold and trafficked in, nor consumed, nor otherwise enjoyed than in the corporate use of it. It is true that by statute, as construed by this court in Henderson Bridge Co. v. Commonwealth, supra, when treating of railroad corporations, the franchise is deemed to include so much of the capital of the corporation and of its other intangible assets as is represented by the difference between the total value of its money earning capacity and the separate value of its tangible property. The franchise of a railroad company may then be accepted for purposes of taxation as the earning value ascribed to its capital by reason of its operation as a common carrier of freight and passengers. Further than that the legislation in this State on that subject has not gone.

Railroads are required to pay taxes upon their tangible property. The mode of taxing it is set out by statute. (Sections 4096-4104, Ky. Stats. 1903.) It is to be valued as an entire piece of property "for the purpose of being operated as a carrier of freight and passengers." (Section 4096, Ky. Stats. 1903.) That is, the roadbed, including right of way and tracks, depots, sidings and its cars, equipage and

tools, are to be taxed in the aggregate as a railroad. The franchise tax is "in addition to the other taxes imposed on it by law" (section 4077, Ky. Stats. 1903), and is meant to cover all the intangible property of the concern, as represented by the earning value of its capital, employed in the specific business of a carrier of freight and passengers. The valuation of this corporate franchise by the State Board of Valuation and Assessment is made by section 4077, supra, the basis for municipal taxation in every municipality in which the corporate franchise may be exercised. In the case at bar it is conceded that appellant railroad company's franchise was so valued and was certified as apportioned to the city of Eminence and the franchise tax paid thereon for the year in controversy. The power given to municipal corporations by section 181, Constitution, and section 3637, Ky. Stats. 1903, to impose and collect license fees upon all franchises, is a revenue provision. It is so treated in its classification by the Constitution, and though in the statute it is coupled with other matters more properly coming under the head of police powers, it is in its scope and effect still an act to raise revenue for the town in one of the ways permitted by the Constitution. For appellees, it is contended that the franchise tax, which is collected off of appellant railroad company under the general assessment of its franchise, being a property tax, is quite distinct from the occupation tax which the town, under the legislative authority, has imposed. But it is not. It is the same thing. At least, the franchise tax includes the valuing of the capital stock of the railroad when and in the event only it exercises the very privileges sought to be taxed again by the ordinance. The same property may be indi-

rectly and incidentally taxed twice is conceded, as, for example, where the owner of mortgaged land pays taxes on it, and the owner of the mortgage pays taxes on the evidence of the debt. But it is not the policy of the State to tax the same property twice as against the same owner. The Constitution requires that taxes shall be uniform upon all property subject to taxation. (Section 171, Constitution.) If the same property were taxed twice for the same purpose as against the same owner, whereas other property was taxed but once for that purpose as against its owner, the taxation would not be uniform. It would violate, not only the letter of the Constitution, but that spirit and absolute equality before the law which is at the bottom of all free government. The owners of other tangible property in Eminence are not taxed on the privilege of employing it in a certain business, either directly or indirectly, when it is assessed ad valorem. Therefore, when they are required to pay an occupation tax, as they have no franchise to be taxed or which is taxed, the license fee which they pay is not duplicate taxation in any sense.

Railroad property has always been regarded as an entirety in this State for purposes of taxation. (Applegate v. Ernst, 3 Bush, 648, 96 Am. Dec., 272; E. & P. R. R. Co. v. Trustees, 12 Bush, 233; Graham v. Mt. Sterling Coal R. R. Co., 14 Bush, 425, 29 Am. Rep., 412.) It is made the subject of special consideration by the present Constitution (section 182), which directed that until changed by legislation the mode of taxation then in existence should prevail. No such change has been indicated, save as taxation of its franchise. General terms, not necessarily indicating a departure from a long settled policy of taxation, which is, indeed, continued in the present

statutes, will not be deemed as applicable to that
policy, where it appears they were not used in spe-
cial connection with the subject of such policy, but
were employed broadly, so that they embrace many
other matters coming within their meaning, and can
be applied only inferentially to the particular sub-
ject. As was said in Neumeyer, Auditor v. Krakel,
110 Ky., 624, 23 Ky. Law Rep., 190, 62 S. W.,
518: "It is a well settled rule that an iso-
lated expression in an act will not ordinarily
be so construed as to conflict with a general
legislative policy." If so radical a change in the
existing and long continued policy of the State
to tax such properties as entireties, and not frag-
mentarily, had been contemplated by the Legislature,
it would not have undertaken to make it in such an
obscure way as this. It was not contemplated by
section 181 of the Constitution, quoted, that the Leg-
islature could authorize a city to tax the same privi-
lege twice for the same year as against the same
owner. The railroad being operated in Eminence is
a part of appellant's railroad company's system. It
no longer has an option whether it will continue to
carry freight and passengers to and from that town.
It is bound to do it or forfeit its charter. Never
before has it been thought that the State could re-
quire its creatures under such severe penalties to do
a service, and then put it in the power of a part of
the State government to keep them from doing it.

The telephone case involves substantially and in
the main the same question discussed above. In ad-
dition, it appears that the city of Eminence some few
years ago offered for sale for a term of twenty years
the franchise to erect, maintain and operate a tele-
phone exchange and to do a telephone business in
that city. Appellant telephone company, being an

accepted bidder, bought this privilege for the price of $50 per year, payable annually. In addition it furnishes the services of two instruments and the use of its poles for certain purposes to the city free of other charge. Under this agreement the plant of appellant was installed. It is since that agreement that the ordinance in suit was enacted. The court is of opinion that, after having sold the telephone company the privilege of putting up and operating its line and conducting its business in the town, the municipality can not afterwards, without the consent of the telephone company, impose an additional charge for the identical privilege. This franchise sold by the city to appellant telephone company was the creature of the city. It was not only to occupy its streets, the consideration being compensation for right of way, but it was for operating its exchange in the city and receiving tolls thereat upon its business. It was that or nothing. The city could not impart to the telephone company any corporate quality. That it already had, or must get from the State. The ordinance selling the franchise by its terms went further than to grant the right to occupy the city streets and alleys. It expressly dealt with, and sold for a consideration, the privilege of doing the identical business within the city that it is doing. We concede that if it should be necessary, in the fair exercise of its police power by the city, to compel the telephone company to conform to some different plan of conducting its business, or even that it should be excluded altogether, if it were such a business as was deleterious to the health or safety of the citizens, the sale of the franchise would not preclude the city in the matter, for it is beyond the power of a municipality, or of the State itself, for that matter, to bargain away its police power by contract.

Wherefore the judgments are each reversed, and causes remanded, for proceedings not inconsistent herewith.

Judge Paynter dissents.