# Falls City Brewing Co. v. Talbott, Auditor of Public Accounts.

(Decided May 15, 1936.)

(As Modified on Denial of Rehearing Oct. 30, 1936.)

MILLIKEN & HANDMAKER for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

Appellant and plaintiff below, Falls City Brewing Company, is a Kentucky corporation with its home office in Louisville, Ky. Its chief business is that of brewing beer, and, prior to the extraordinary session of the Legislature in 1933, it paid to the proper officers, whose duty it was to collect it for the commonwealth, its annual corporate license tax as prescribed in sections 4189-1 and 4189-2 of the 1930 edition of Carroll's Kentucky Statutes, for the ensuing year. It likewise paid its occupation tax as a brewer levied and assessed in section 4224 of the same statute. The corporate license tax, as calculated by the method prescribed in the statute, amounted to $462.40; while the occupation tax referred to and which was so paid by plaintiff was then

$200. At the Extraordinary Session of the Legislature for the year 1933 there was enacted chapter 5, page 14, of the published acts of that session "relating to the manufacture, sale and distribution of beer and wines and imposing taxes thereon," etc., and which is now sections 4214d-1 to and including 4214d-16 of Baldwin's 1934 Supplement to the 1930 edition of Carroll's Kentucky Statutes. None of its provisions in any wise modified defendant's corporate license tax theretofore existing, and which it had paid at the beginning of the year 1933 for the entire ensuing one; but section 2 of the 1933 act (Ky. Stats. Supp. 1934, sec. 4214d-2) increased the occupational tax on "every person engaged in the manufacture of beverages" (defined in the act as embracing beer) from $200 to $500 annually, and its section 6 (Ky. Stats. Supp. 1934, sec. 4214d-7) is in these words: "In addition to the license tax levied in Sections 2, 3 and 4 * * * a tax of one dollar and twenty-five cents [$1.25] a barrel of thirty-one [31] gallons and a like or proportionate rate per gallon or fractional part thereof on beverages sold in any other container of more or less than thirty-one [31] gallons, is hereby levied upon the sale or distribution by gift or sale of beverages. The said tax shall be paid by the manufacturer or brewer if he is in the State, or if not by the brewer's agent or wholesaler, if he be in the State, and if neither of those just mentioned be in the State, then by the retailer."

The act took effect in September, 1933, and subsequent thereto (and before the expiration of the year for which the previously paid license and occupational taxes had expired) plaintiff, on demand made therefor, paid an additional $500 occupational tax, as prescribed in section 2 of the 1933 act. Likewise, between the taking effect of that act and the expiration of the year for which it had paid its corporation license tax and its occupational tax as stated, it made reports of the amount of beer it manufactured and paid the tax levied thereon according to the provisions of section 6 of the act, and which amounted to $26,737.54. Later, conceiving that both of the two latter sums (i. e., $26,737.54 and the increased $500 occupational tax) were illegal as applied to the remaining portion of its licensed year, it filed this action in the Franklin circuit court against defendant as state auditor of public accounts, seeking a mandatory order requiring him to issue his warrant for the total

amount of such alleged wrongful payments ($27,737.54), upon the ground that, being illegal and involuntarily paid, as was also contended by plaintiff, it was entitled to the relief sought. Before the filing of any defensive pleadings or motions, plaintiff amended its petition by injecting more elaboration but not altering the grounds of complaint, and defendant's demurrer to it as so amended was sustained; whereupon plaintiff declined to plead further and its action was dismissed, to reverse which it prosecutes this appeal.

The argument of learned counsel for plaintiff as contained in their brief filed in this court is necessarily based upon the contention that the amounts they seek to recover herein for their client represent exacted payments under what they insist was unlawful "double taxation." In disposing of that contention, we will put aside the question of voluntary or involuntary payment so as to entitle plaintiff in any event to maintain the action, since we are clearly of the opinion that none of the amount sought to be recovered is tainted with the vice urged against the validity of the assessments, unless perhaps the occupational tax item of $500, to the extent hereinafter referred to.

At the beginning of the discussion, it might be stated that we have no constitutional provision against strictly and technically "double taxation," but we, in a number of cases, as well as some other courts with no constitutional inhibition against double taxation, have declared that courts regard it as against public policy (in the absence of clear legislative intent to the contrary) for the same tax-levying authority to levy and collect such taxes for the same period of time on the same species and character of property or privilege, but, for that rule to prevail, the contested tax must possess all of the elements of such duplication and with no contrary manifested intent by the Legislature. Judge Cooley, in the 1924 edition of his excellent publication, "The Law of Taxation," volume 1, sections 223 to and including 246, learnedly and lucidly discusses the question of "Double Taxation," including its definition as stated, as well as when it may or may not be levied and collected, and all other matters relating thereto. In section 226 he points out that a levying statute will not be construed as imposing an inhibited double tax "if any other reasonable construction can be placed on it." Like-

wise in section 228 he says that the phrase "double taxation" "is generally confined to property taxes. The imposition of a property tax and also a license or occupation tax is not within the prohibition, nor is, ordinarily, the imposition of two or more license or occupation taxes." In section 232 the learned author says: "It is a settled rule that it is not double taxation to impose an ad valorem tax on property used in a business and also to impose a license tax on the business or the use of the property. * * * Both a license or franchise tax and a tax on the property may be imposed." In section 243 of the same work it is stated that inhibited double taxation applies as well to corporations as to individuals, but that, "in case of corporations, there is no double taxation merely because each of the separate taxable elements is taxed. Among the elements of corporate taxable values are [a] the franchise, [b] the capital stock as the property of the corporation, and [c] tangible corporate property. * * * As already noted, there is no obnoxious double taxation because of the imposition of both a property and a license or occupation tax." See, also, the text in 61 C. J. p. 144, and notes 86 and 87.

Counsel for plaintiff strongly rely on the case of Greene v. Frankfort Distillery Company, 209 Ky. 427, 273 S. W. 28. But an examination of that case will show that this court concluded that the Legislature in enacting the questioned tax nowhere indicated that it was not intended to be forbidden double tax. Besides, we, in the later case of Shanks, Auditor, v. Independent Oil Co., 225 Ky. 303, 8 S. W. (2d) 383, pointed out that the ground upon which that opinion was based was an "assumed" one both by the court and the parties to the action, and thereby a doubt was cast on the correctness of the Greene opinion. The holding in the Shanks Case, as will be seen from a reading of the opinion, is contrary to the contention made by plaintiff through its counsel herein, and it sustained the judgment of the trial court in denying recovery, for the reason that the taxes sought to be recovered were not levied upon the same thing so as to stamp the questioned levy as inhibited double taxation. It has been the policy of this court to indulge the presumption against the intention of the Legislature to impose multiple or duplicate taxation on the same privilege, occupation, or property. See Commonwealth v.

Walsh's Trustee, 133 Ky. 103, 106 S. W. 240; 117 S. W. 398, 32 Ky. Law Rep. 460; Merchants Ice & Cold Storage Co. v. Commonwealth, 154 Ky. 452, 157 S. W. 717; Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791; Greene v. E. H. Taylor, Jr., & Sons, 184 Ky. 739, 212 S. W. 925.

In obedience to that principle, our conclusion reached in the Shanks Case, supra, was adopted, as was also the same conclusion approved in the very recent case of City of Louisville et al. v. Churchill Downs, — Ky. — , — S. W. (2d) — , rendered May 5, 1936. Upon the authority of those cases, substantiated by others referred to therein, and Judge Cooley's text, we are clearly of the opinion that the production tax collected from plaintiff of $1.25 under the 1933 statute was imposed and levied upon an entirely different taxable element than the corporate license tax of $462.40 or the $200 occupational tax which plaintiff paid prior to the taking effect of the 1933 act. We are not called upon for the purposes of this case to determine the exact nature of either of the three taxes that plaintiff is now or has been paying, i. e., corporate license tax, occupational tax, and production tax, except to say that neither of them is upon the same taxable item or element so as to render their imposition forbidden multiple or duplicate taxes.

However, it does appear, according to plaintiff's pleadings, that it had paid in April, 1933, its occupational assessment as a brewer for the ensuing year up to the same date of April in 1934, and that the increased amount for the same right up to $500 by the 1933 act for the remaining portion of that year, following the taking effect of the 1933 act, was unlawfully imposed and collected, and it was entitled to the relief asked to that extent only. We have determined the questions involved upon the theory that the payment of the taxes involved is prospective and not to apply retroactively to the past fiscal year, as is the theory of plaintiff and to which its counsel devote a considerable portion of their brief. The trial court appears to have determined the case solely upon the theory that none of the taxes sought to be recovered were duplicate assessments so as to entitle plaintiff to succeed. It did not find whether or not the occupational payment was voluntarily or involuntarily made, and upon a return of the case it will determine

that issue with reference to the alleged excess occupational tax, constituting one of the items for which recovery is sought, and, if its payment is found to have been involuntarily made, then judgment should be rendered for the contested amount as hereinbefore pointed out, otherwise not.

Wherefore the judgment is affirmed in so far as plaintiff sought the recovery of any part of the production tax referred to in its petition, but it is reversed in so far as the recovery of the proportionate part of its increased occupational tax, as sought in its petition for the balance of the year following the taking effect of the 1933 act for which it had previously paid the prior annual tax for the same purpose, with directions to proceed in accordance with this opinion.

The whole court sitting.