**COOKSEY BROTHERS DISPOSAL COMPANY, INC., Appellant,**

v.

**BOYD COUNTY, Kentucky, Appellee.**

**No. 97–CA–0400–MR.**

Court of Appeals of Kentucky.

Dec. 12, 1997.

Discretionary Review Denied
by Supreme Court May 13, 1998.

Ernest M. Pitt, Jr., Ashland, J. David Smith, Jr., Douglas P. Romaine, Lizbeth Ann Tully, Lexington, for Appellant.

Daniel King, III, Asst. Boyd County Attorney, Catlettsburg, Cathy Cravens Snell, Division of Legal Services, Frankfort, for Appellee.

Before BUCKINGHAM, GUIDUGLI and JOHNSON, JJ.

## OPINION

BUCKINGHAM, Judge.

Cooksey Brothers Disposal Company, Inc., (Cooksey) appeals from a summary judgment in favor of Boyd County, Kentucky (Boyd County), in an action to collect unpaid public service corporation taxes. For the reasons set forth hereinafter, we affirm.

Boyd County filed suit against Cooksey alleging that Cooksey failed to pay local franchise taxes under Kentucky Revised Statute (KRS) 136.120. Cooksey answered and counterclaimed, admitting that it had not paid the taxes but asserting that, as a private business entity, it could not be constitutionally taxed under the statute as a public service corporation. It sought to have the court declare KRS 136.120(1) unconstitutional as to municipal solid waste disposal facilities that dispose of solid waste by landfill and also challenged the assessment as double taxation in conjunction with the tax authorized by KRS 68.178. Holding the statute in question to be constitutional as it applies to these solid waste disposal facilities, the Boyd Circuit Court awarded summary judgment to Boyd County in the amount of $32,180.94. This appeal followed.

On appeal, Cooksey again argues that KRS 136.120 is unconstitutional as applied to municipal solid waste disposal facilities that dispose of solid waste by landfill, under Sections 1, 2, 3, 51, and 171 of the Kentucky Constitution and the Fourteenth Amendment to the U.S. Constitution, and that the statute is an impermissible double taxation when combined with KRS 68.178.

■ We may readily dispose of Cooksey's argument under Section 51 of the Kentucky Constitution, which requires that the subject of an act enacted by the General Assembly be expressed in the title and forbids an act from relating to more than one subject. Cooksey argues that the title to KRS 136.120, "PUBLIC SERVICE CORPORATION PROPERTY TAX; CLASSIFICATION; ASSESSMENT; CERTIFICATION," does not agree with its subject because municipal solid waste disposal facilities are not public service corporations. However, Section 51 requires that the title of an **act** agree with the body of the **act**, not that the title of a **statute** agree with the body of the **statute**. *Arciero v. Hager*, Ky., 397 S.W.2d 50, 53 (1965), *overruled in part on other grounds* by *Hicks v. Enlow*, Ky., 764 S.W.2d 68 (1989). The act which added municipal solid waste disposal facilities to KRS 136.120 was Senate Bill 2 in the 1991 Extraordinary Session. It is entitled, "AN ACT relating to solid waste management and declaring an emergency." 1991 Kentucky Acts, Ch. 12. This clearly complies with Section 51.

■ Cooksey's position is better expressed in its remaining constitutional challenges. The Fourteenth Amendment guarantees equal protection of the laws, and Sections 1,2, and 3 of the Kentucky Constitution mirror that protection. *Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873, 878 (1994). Section 171 of the Kentucky Constitution provides:

> The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.

Cooksey asserts that since municipal solid waste disposal facilities in general and Cooksey in particular are not public service corporations, classification and taxation of these entities under KRS 136.120 is unconstitutional.

■ The General Assembly has broad discretion in making tax classifications. "[I]n a taxation case, unless a rational basis for such law can be completely refuted, then the law may stand as constitutional. Notably, the burden on the ones attacking the legislative tax arrangement is the negation of every conceivable basis which might support it." *Smith, supra*, at 875. Still, a tax must apply equally to all in a class, it must not be unreasonable or arbitrary, and it should be

based upon some reasonable distinction. *Reynolds Metal Co. v. Martin*, 269 Ky. 378, 107 S.W.2d 251 (1937). Courts will sustain classifications if there are substantial differences between the entities classified. *Id.*

KRS 136.120(1) provides:

Every railway company, sleeping car company, chair car company, dining car company, gas company, water company, ferry company, bridge company, street railway company, interurban electric railroad company, express company, electric light company, electric power company, telephone company, telegraph company, commercial air carrier, air freight carrier, pipeline company, common carrier water transportation company, privately owned regulated sewer company, cable television company, **municipal solid waste disposal facility, as defined by KRS 224.01–010(15), where solid waste is disposed by landfilling,** railroad car line company, which means any company, other than a railroad company, which owns, uses, furnishes, leases, rents, or operates to, from, through, in, or across this state or any part thereof, any kind of railroad car including, but not limited to, flat, tank, refrigerator, passenger, or similar type car, and every other like company or business performing any public service, except bus line companies, regular and irregular route common carrier trucking companies, and taxicab companies, shall annually pay a tax on its operating property to the state and to the extent the property is liable to taxation shall pay a local tax thereon to the county, incorporated city, and taxing district in which its operating property is located.

(Emphasis added). The inclusion of municipal solid waste disposal facilities was added in 1991 with the enactment of Senate Bill 2.

██ "Operating property" is the operating tangible property and the franchise,[1] and payment of the tax on operating property is deemed payment of tax on the franchise. KRS 136.115(2). The Revenue Cabinet assesses the property of companies subject to this tax and certifies the values to local taxing authorities. KRS 136.120(3).

Corporations taxed under KRS 136.120 do not pay the corporation license tax required by KRS 136.070. A license tax is a tax levied for the privilege of existing and doing business within the state. 1 Ky. Tax Rep. (CCH) ¶ 5–001 (1997). KRS 136.070 requires corporations to pay taxes measured by the capital employed in business which is apportioned to Kentucky, with a minimum tax of $30.00. "Capital" includes capital stock, surplus, and borrowed money. KRS 136.070(2)(a). This tax is assessed by the Revenue Cabinet. In addition, corporations owning real or personal property in Kentucky are subject to the ad valorem or property tax, KRS 132.020, assessed by local property valuation administrators (PVAs).

Cooksey argues that, until its amendment in 1991, KRS 136.120 applied to corporations all sharing the common quality of operating under franchises or special licensing arrangements. "Municipal solid waste disposal facility" as defined in KRS 224.01–010(15) and incorporated by reference in KRS 136.120 makes no reference to a franchise. On its face, it draws no distinction between corporations operating under a franchise or special privilege and those privately contracting for their customers. Cooksey's president stated in an affidavit that Cooksey privately contracts for its customers and has no franchise or exclusive contract with any government entity. There is no dispute that Cooksey is a municipal solid waste disposal facility disposing of waste by landfill, as those terms are used in the statute. The issue is whether it is constitutional to classify Cooksey and other similar corporations with public service corporations for tax purposes.

Cases interpreting Kentucky Statute (KS) 4077, the predecessor to KRS 136.120, explain that what the law taxed was the added value which the exercise by the corporation

---

1. A franchise has been defined as "a right or privilege granted by a sovereign power to a party to do some act which such party could not do without a grant from government." *Eastern Kentucky Resources v. Arnett*, Ky., 934 S.W.2d 270, 275 (1996). However, "[a] corporation's franchise may be one thing or another. The word is not always used with reference to the same meaning. It is sometimes regarded as the mere right to be a corporation." *Cumberland Telephone & Telegraph Co. v. Hopkins*, 121 Ky. 850, 856, 90 S.W. 594, 595 (1906).

of any special or exclusive privilege or franchise not allowed by law to natural persons gives to the tangible property. *Louisville Tobacco Warehouse Co. v. Commonwealth*, 106 Ky. 165, 49 S.W. 1069 (1899). A later case, *Commonwealth v. Louisville Transfer*, 181 Ky. 305, 204 S.W. 92 (1918), held that "the intangible property value intended to be subjected to taxation by section 4077 is in reality that value which is given to tangible corporate property and the exercise of the franchise, arising out of the exclusive or special character of the privilege granted." *Id.* at 307, 204 S.W. 92.

The circuit court expressed no particular justification for the classification. It concluded that there was no legal significance to the fact that Cooksey is not a public service corporation, like the other entities taxed under KRS 136.120. It wrote:

> The General Assembly has set forth a rational basis for including businesses that engage in solid waste disposal by the landfill method in KRS 136.120, and Cooksey has not demonstrated as a matter of fact or law that inclusion of that particular business is an unreasonable classification or special legislation that is somehow oppressive or hostile to Cooksey or its particular business. Nor has Cooksey met its burden to negative every conceivable basis which might support the franchise tax imposed upon its intangible assets, ...

The cases interpreting KS 4077 are of little aid in analyzing KRS 136.120. Until the enactment of the general franchise tax in 1906, public service corporations taxed under KS 4077 were the only corporations taxed on the value of their franchises. "[C]orporations not possessing or exercising an exclusive privilege do not pay a franchise tax at all. The tax upon them is based alone upon the value of their tangible property...." *Marion National Bank of Lebanon v. Burton*, 121 Ky. 876, 90 S.W. 944, 948 (1906). *See also* 1 Ky. Tax Rep., *supra*, ¶ 5-010. Today, each corporation pays a tax on its privilege to do business as a corporation in Kentucky, under either the license tax of KRS 136.070 or the public service tax of KRS 136.120.

KRS 224.43-010 states the policy and purpose for managing solid waste in the Commonwealth. As the statute was amended by Senate Bill 2 in 1991, the General Assembly stated that "[i]t is the policy of the Commonwealth to limit and reduce the amount of solid waste disposed in municipal solid waste disposal facilities in the Commonwealth and to encourage a regional approach to solid waste management." KRS 224.43-010(2). One of the bill's goals was to reduce by 25 percent by 1997 the amount of municipal solid waste generated by Kentuckians. KRS 224.43-010(4). The general reason given by the General Assembly for solid waste legislation is "to provide for the management of solid waste, including reduction, collection, transportation, and disposal in a manner that will protect the public health and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, and enhance the beauty and quality of our environment." KRS 224.43-010(1).

In KRS 224.43-010, the General Assembly has expressed a legitimate state interest in solid waste disposal and has further stated that it desires to limit and reduce the amount of solid waste disposed in municipal solid waste disposal facilities and to encourage a regional approach to solid waste management. KRS 224.43-010(2). In connection with its desire to control these matters, it has elected to cause municipal solid waste disposal facilities to be taxed along with public service corporations pursuant to KRS 136.120. By taxing such facilities in this manner, the Revenue Cabinet has the sole power to value and assess all of the property of each business. KRS 136.120(3). The effect of this is to centralize and bring uniformity to the assessment of these companies' property.[2] We perceive a rational basis for the inclusion of municipal solid waste disposal facilities with public service corporations

---

2. Property owned by companies that are not taxed as public service corporations under KRS 136.120 is assessed by local PVAs. Such assessments are made by separate offices in each of the counties across the Commonwealth and may not be as consistent, from county to county, as central assessment by the Revenue Cabinet.

for taxation purposes, and Cooksey has not completely refuted that basis.

In *Reynolds Metal, supra,* the Depression-era court upheld a tax exemption for the banking industry because of the profound effect on the state economy and the need to keep interest rates low. *Id.,* 107 S.W.2d at 262. In *Delta Air Lines, Inc. v. Commonwealth,* Ky., 689 S.W.2d 14 (1985), the court justified preferential treatment for truck lines and railroad lines due to their significance to the state economy. *Id.* at 18. In the case sub judice, the classification of municipal solid waste disposal facilities that dispose of waste by landfill with public service corporations singles out these corporations for tax assessment unlike any other type of waste disposal facility. Although this classification is not a perfect fit, it is reasonably related to the General Assembly's goals for solid waste management. The statute is constitutional since Cooksey has not refuted every conceivable basis to support the classification. *Smith, supra,* at 875.

 Cooksey also contends that KRS 136.120, in combination with KRS 68.178, constitutes double taxation. Double taxation results where two or more taxes are "(1) imposed on the same property, (2) by the same state or government, (3) during the same taxing period, and (4) for the same purpose." *Fox v. Board for Louisville & Jefferson County Children's Home,* 244 Ky. 1, 13, 50 S.W.2d 67, 72 (1932). The circuit court's order made no mention of this argument. At any rate, we disagree with Cooksey's contention.

To meet the first requirement, Cooksey must show that the license fee authorized by KRS 68.178 taxes the same property as KRS 136.120. The license fee is based upon a percentage of gross receipts. Cooksey suggests that this is actually an occupational tax, citing *Commissioners of Sinking Fund v. Hopson,* Ky.App., 613 S.W.2d 621, 623 (1980) (license fee in city ordinance that did not regulate but was only revenue measure is an occupational tax). Cooksey then notes that "operating property" is defined as the operating tangible property and the franchise. KRS 136.115(2). Describing the franchise as the right to do the business for which the

corporation was created, Cooksey concludes both taxes tax the right to operate a municipal solid waste disposal facility. We disagree.

In *Falls City Brewing Company v. Talbott,* 265 Ky. 541, 97 S.W.2d 57 (1936), Falls City challenged the imposition of a production tax, in addition to the corporate license tax and occupational tax it was already paying. The court observed that the problem of double taxation is generally confined to property taxes. It also quoted with approval from a 1924 treatise: "It is a settled rule that it is not double taxation to impose an ad valorem tax on property used in a business and also to impose a license tax on the business or the use of the property." *Id.,* 97 S.W.2d at 59. The court concluded that corporate license taxes, occupational taxes, and production taxes tax different taxable items and do not constitute double taxation. *Id.* at 60.

The taxes authorized by KRS 68.178 and KRS 136.120 tax different taxable elements. The latter statute taxes a corporation's tangible property, the former its gross receipts. The Revenue Cabinet assesses the operating property, defined by KRS 136.115(2) as the operating tangible property and the franchise, of a domestic public service corporation by its fair cash value as a unit. KRS 136.160(1). Although KRS 136.115(2) deems payment of taxes on operating property to be payment of taxes on the franchise, Cooksey has not shown that Boyd County did, in fact, tax the value of a franchise under KRS 136.120. On the tax bill Boyd County sought to collect, Cooksey's property was assessed at two rates, real estate and tangible. Franchise is not mentioned.

Cooksey has not shown what, if any, license fee Boyd County actually adopted pursuant to KRS 68.178, or that it has imposed such a fee on Cooksey. Even if it has, and even if the fee authorized by KRS 68.178 can be characterized as a tax on Cooksey's right to do business, the public service corporation property tax under KRS 136.120 and the levy under KRS 68.178 are not double taxation.

*Cumberland Telephone & Telegraph Co. v. Hopkins,* 121 Ky. 850, 90 S.W. 594 (1906),

cited by Cooksey, is distinguishable. In that case, a telephone company and a railroad company successfully challenged a local license tax. The Court reasoned that since the railroad was required by charter to carry freight and passengers to Hopkins, and Hopkins had sold the telephone company the privilege of operating its line and conducting business in the city, the city could not also tax the companies for those same privileges. *Id.*, 90 S.W. at 597. In the case sub judice, Cooksey has no charter or special privilege from Boyd County on which to be taxed.

KRS 136.120 is constitutional as applied to Cooksey and other municipal solid waste disposal facilities, and there is no impermissible double taxation. There were no material facts in issue, and Boyd County was entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 483 (1991).

We affirm the judgment of the Boyd Circuit Court.[3]

All concur.

---

3. To the extent that we are affirming the trial court for different reasons than it gave in its judgment, we have the authority to do so. *See* *Revenue Cabinet v. Joy Technologies, Inc.*, Ky. App., 838 S.W.2d 406, 410 (1992).